328 So.2d 330 (1976)
XEROX CORPORATION
v.
CITY OF JACKSON.
No. 48819.
Supreme Court of Mississippi.
February 17, 1976.
Rehearing Denied March 30, 1976.
*331 Brunini, Grantham, Grower & Hewes, W. David Watkins, Jackson, for appellant.
Bacon & Smith, Arthur F. Jernigan, Jr., John E. Stone, Jackson, for appellee.
Before INZER, ROBERTSON and SUGG, JJ.
ROBERTSON, Justice.
Xerox Corporation has appealed from a judgment of the Circuit Court of the First Judicial District of Hinds County, Mississippi, which judgment was based on a jury verdict fixing the cash value of the copying and duplicating machines of Xerox as of January 1, 1973, at $5,108,184.
The tax assessor of the City of Jackson had found the cash value of Xerox machinery, tools and equipment as of January 1, 1973, to be $5,996,342, and had fixed the assessment on the 1973 Personal Property Rolls at 37% of this figure. After hearing Xerox's objections, the City Council approved the assessment based on the $5,996,342 valuation.
Xerox appealed to the circuit court where it was tried de novo before a jury. The jury in its verdict fixed the actual cash value at $5,108,184.
On appeal, Xerox contends that;
1. The City's assessment does not meet the constitutional requirement that "taxation shall be uniform and equal throughout the state," as provided in Section 112 of the Mississippi Constitution of 1890; and
2. The market data method (sales comparison) used by the City in determining actual cash value is not as accurate and reliable in Xerox's peculiar case as the income capitalization method used by Xerox and, therefore, the City should be required to use the income capitalization method.
Xerox concludes its Brief with this statement:
"The Judgment of the lower court should be reversed and the case remanded with directions to value Xerox's property on the basis of the State Tax Commission formula or by income capitalization."
Mississippi Code Annotated section 27-35-29 (1972), requires:
"It shall be the duty of each person fixing the value of his property to estimate the same at its cash value at the time of valuation, and not what it might sell for at a forced sale, but what he would be willing and would expect to accept for it if he were disposed to sell it." (Emphasis added).
There are three approved methods of determining the cash or market value of property: Market data (sales comparison); replacement cost; and income capitalization.
Francis Douglas, Regional Property Tax Manager, prepared and rendered Xerox's *332 1973 report of actual cash values of its property to the City. Douglas testified:
"Each was fully explored, with the hopes of being able to use all three. I took them one at a time, beginning with the one that I hoped to be the most productive, which is normally the most reliable, and that is the utilization of sales in the marketplace."
Douglas testified further that he couldn't use the market data approach because during the calendar year 1972 Xerox sold only one copying machine in the City of Jackson, while leasing 647 copying machines. He next tried the replacement cost method and determined that this method also was not feasible or practical.
He finally tried the income capitalization method and decided that in Xerox's unique situation this method was the more reliable and accurate in arriving at the actual cash value of its copying and duplicating machines.
As an example of how the income capitalization formula worked, Xerox used its most popular copier, the 3600-I. The complicated formula was applied in this way:

 Gross Annual Rental $9,720
 Less Expenses:
 Maintenance (7.6% of Gross Annual Rental) $738
 Management (1.5% of Gross Annual Rental) 146
 Insurance (1% of Gross Annual Rental) 97
 ___
 Total Expenses $ 981
 ______
 Rental After Expenses $8,739
 The rate of return was arrived at in this way:
 RENT AFTER EXPENSES 100%
 PORTION OF RENT ATTRIBUTABLE
 TO LEASING ACTIVITY 17.5%
 _____
 PORTION OF RENT ATTRIBUTABLE
 TO COPIER AND SUBJECT TO
 CAPITALIZATION 82.5%
 INTEREST OR RATE OF RETURN 10%
 PROPERTY TAXES 3%
 ___
 TOTAL 13%
 13% = X
 ____ ___
 82.5% 100
 X = 15.75% OVERALL RATE OF RETURN

In arriving at its valuation, the City used a 5% annual rate of depreciation, thereby assigning a 20-year useful life to Xerox's copiers. Xerox contends that the *333 average life of its copiers is five years and that the depreciation rate should be 20%. Xerox submitted this tabulation, again using the 3600-I copier as an example:

 Annual Total
 Remaining Recapture or Capitalization
 Life (years) Return Depreciation Rate Value
 -------------------------------------------------------------------
 5 .1575 .20 .3575 $24,440
 4 .1575 .25 .4075 21,440
 3 .1575 .33 .4875 17,800
 2 .1575 .50 .6575 13,290
 1 .1575 1.00 1.1575 7,550
 (Any equipment surviving the reasonable life expectancy of 5 years retains
 the value of $7,550.)

Witnesses for Xerox testified that it would sell a new or used Xerox 3600-I copier only at the catalog list price of $34,150. Xerox was questioned as to whether it would accept $24,440, as shown on its capitalization format as the actual cash value of a new 3600-I copier and its answer was "no". The City contends here, as it did in lower court, that the actual cash value of a typical 3600-I copier, according to section 27-35-29, supra, was $34,150, the amount Xerox testified it "would be willing and would expect to accept for it (3600-I) if he (Xerox) were disposed to sell it". The City says that $34,150 was the figure it used in valuing the Xerox 3600-I.
All of Xerox's witnesses admitted that the income capitalization method of arriving at the actual cash or market value was the least desirable method if either one of the other two methods could be applied. Xerox's contention is that, in its unique and unusual situation, neither the market data method nor the replacement cost method can be applied, and that the City must use either the income capitalization method or the Mississippi State Tax Commission formula.
The income capitalization method is very complicated and subject to many variables that cannot be checked out by the taxing authorities. For instance, on its 1973 return the expense of management was figured at 1.5% of the gross annual rental, whereas on its 1974 return Xerox figured the management expense at 24% of the gross annual rental.
Thomas S. Morse, manager of property tax operations for Xerox, testified that the City could check the accuracy of the variable management percentages by auditing the records of Xerox at the home office in Rochester, New York, or the City could subpoena them and Xerox would bring the records to Jackson. Morse stated that the federal government audited Xerox's records but had only audited through 1969 at the present time.
Rex Wright, the City's Assessor and Collector, testified that he had a staff of forty employees handling approximately 82,000 assessments (real property, personal property, privilege licenses, and special assessments). He simply does not have the trained personnel to audit Xerox and other manufacturing corporations.
Section 112 of the Mississippi Constitution of 1890 as amended provides in part:
"Taxation shall be uniform and equal throughtout the state. Property shall be taxed in proportion to its value. Property shall be assessed for taxes under general laws, and by uniform rules, and in proportion to its value." Miss. Code Ann. (1972), Vol. 1.
*334 We have construed this language to mean that assessments must be equal and uniform in the taxing district. McArdle's Estate v. City of Jackson, 215 Miss. 571, 61 So.2d 400, 63 So.2d 101 (1952); Lavecchia v. Mayor and Aldermen of City of Vicksburg, 197 Miss. 860, 20 So.2d 831 (1945); Redmond v. City of Jackson, 143 Miss. 114, 108 So. 444 (1926). In this case the taxing district is the City of Jackson.
All witnesses for the City testified that the market data method of determining the actual cash value was uniformly and equally applied to machines and equipment of I.B.M., the 3-M Company, and National Cash Register, and all other manufacturers leasing machines and equipment.
The jury applied a more realistic annual depreciation rate than the City in arriving at its verdict, and we think rightly so under the testimony.
The verdict of the jury is amply supported by the evidence, and, therefore, the judgment of the lower court, based on the jury verdict, is affirmed.
Affirmed.
GILLESPIE, C.J., PATTERSON and INZER, P. JJ., and SMITH, SUGG, WALKER and BROOM, JJ., concur.