## XEROX CORPORATION v. COUNTY OF HENNEPIN.

244 N. W. 2d 135.

June 25, 1976—No. 45983.

*Gray, Plant, Mooty & Anderson, Kenneth M. Anderson,* and *James R. Lande,* for appellant.

*Gary W. Flakne,* County Attorney, and *David E. Culbert,* Assistant County Attorney, for respondent.

Heard before Rogosheske, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

YETKA, JUSTICE.

Appeal from the Hennepin County District Court arising out of a petition by taxpayer, Xerox Corporation, to review its personal property tax assessment for the years 1968 and 1969 (payable 1969 and 1970). Xerox contested the valuations placed on its personal property, claiming they were excessive. The court ruled that Xerox failed to meet "its burden of proof and make sufficient showing that the personal property owned by [it] on the assessment dates in question [May 1, 1968, and May 1, 1969] was valued at a valuation in excess of its fair market value, or that such had been unfairly or unequally assessed on such dates, or that the tax levied against the same was illegal in whole or in part." Xerox's motion for amended findings of fact, conclusions of law, and order for judgment or, alternatively, for a new trial was denied and judgment was entered. Xerox appeals from both the judgment and the order denying its motion. We reverse.

Xerox is a manufacturer of copying and duplicating equipment. Although its equipment is offered for sale at established prices, because of the rapid technological obsolescence to which copiers are subject, its market is almost exclusively on a rental basis. Indicative of the nature of Xerox's market is the fact that in Minnesota only four copiers had been sold as of the date of the contested assessments. The lack of sales experience and data required the value of Xerox equipment to be determined by a method of valuation other than sales prices.

Xerox's 1968 personal property tax return determined the value of its copiers by multiplying the average gross monthly rental of each machine by 45. For purposes of reflecting the depreciating value of its used equipment, Xerox utilized a 5-year useful life and a 20-percent residual or salvage value. This method of valuation was modified by Hennepin County by increasing the "gross rent multiplier" to 54, the useful life to 6 years, and the residual value to 25 percent.

In 1969 Xerox altered its method of valuation. Instead of simply reporting the product of the "gross rental multiplier," it also determined the value of its copiers by the capitalization of income method and reported the average of the two. The first step was identical to that reported in 1968; the second step was to divide the annual rental income of a copier by the capitalization rate of 33.6 percent. The "cap" rate was the sum of the percentages of yearly depreciation, expenses, property tax, and expected return on investment. The results of steps one and two were then averaged. As in 1968, Xerox utilized a 5-year useful life and a 20-percent residual value in reporting the value of its used copiers. Hennepin County essentially accepted this method of valuation with the exception of increasing useful life to 6 years and residual value to 25 percent.

In 1970 Hennepin County adopted the method of valuing Xerox copiers recommended by the State Department of Taxation. The state utilized exclusively the capitalization of income method as follows:

(1) It reduced gross annual rentals by management, maintenance, and insurance expenses;

(2) it developed a "cap" rate of 30.4 percent, which was the sum of expected return on investment (8.4 percent), depreciation (18 percent), and taxes (4 percent); and

(3) it divided the net income determined in step one by the "cap" rate in step two in order to arrive at the value of copiers. For used equipment, the state utilized a 5-year useful life and a 10-percent residual value.

It is Xerox's contention that the methods of valuation used by Hennepin County in 1968 and 1969 were clearly erroneous and resulted in a value in excess of fair market value. It urges that the method utilized by the state and Hennepin County beginning in 1970 was the only correct method. It further contends that the 6-year useful life assigned to its copiers by the county is without basis in fact and that the useful life should be 5 years.

The sole issue raised on appeal is whether the finding of the trial court that Xerox failed to meet its burden of proof in establishing that the assessed valuation of its personal property was excessive is supported by substantial evidence.

Minn. St. 273.11 provides in part that for purposes of tax assessment "all property shall be valued at its market value." Market value is defined in Minn. St. 272.03, subd. 8, as "the usual selling price at the place where the property to which the term is applied shall be at the time of assessment; being the price which could be obtained at private sale and not at forced or auction sale."

In State v. Wagner, 233 Minn. 241, 245, 46 N. W. 2d 676, 680 (1951), we recognized the inapplicability of the above standard where there is no sales market for the property involved. We said:

"It is perfectly obvious that where there is no standardized market for a particular kind and quantity of property a reference to the usual selling price or market value is not a reference to the actual price at which it would sell if offered for sale on a given day. It is quite clear that the old jingle which says that 'the value of a thing is the price it will bring' does not state an adequate formula to determine the value of property for all purposes."

We went on to say (233 Minn. 251, 46 N. W. 2d 683) :

"It should be recognized that in cases where no standardized market is shown to exist for the kind and quantity of property being valued it is pure fiction to regard the value to be deter-

mined as a market value in any real sense. In such cases, all that can be done is to determine a fair value for the property from all the relevant facts in evidence."

See, also, State of Minnesota v. Federal Reserve Bank, 25 F. Supp. 14 (D. C. Minn. 1938).

It is the settled rule of this court that the assessor's valuation is prima facie valid and the burden rests upon the taxpayer to establish that the valuation is excessive. Red Owl Stores, Inc. v. Commr. of Taxation, 264 Minn. 1, 117 N. W. 2d 401 (1962); Schleiff v. County of Freeborn, 231 Minn. 389, 43 N. W. 2d 265 (1950). The assessor must, however, consider all relevant factors affecting market value.

The trial court, without memorandum or other dispositive findings, found that Xerox failed to meet the burden of establishing that the valuations were excessive. The finding of the trial court must be sustained upon review unless it is clearly erroneous. It may, of course, be held clearly erroneous if the reviewing court on the entire record is left with a definite and firm conviction that a mistake has been committed. See, In re Assessments of Silver Lake Apartments, Inc. v. County of Olmsted, 295 Minn. 548, 204 N. W. 2d 415 (1973). It is evident from a review of the record before us that the assessments in question were not the product of a careful and full consideration, thus convincing us that a mistake has been made.

Both the Minneapolis city assessor and his chief appraiser for personal property testified that the 1968 appraisal was essentially a product of compromise. In prior years a gross rent multiplier of 45 had been used. There was no explanation of how that figure was arrived at. In 1968 the assessor's office was furnished with partial price lists for Xerox copiers. In comparing monthly rentals with the Xerox asking prices, it was determined that the latter was approximately 65 times the former. Without further explanation the city assessor simply stated:

"What we actually did was average out between 45 and 65, and that was 54 times the monthly rent."

There are several flaws in this method of valuation. First, gross rent multipliers appear to be merely a shorthand method of valuation dependent for their validity on other factors. In re New York Title & Mortgage Co. 21 N. Y. S. 2d 575 (Sup. Ct. N. Y. Co. 1940). The city assessor indicated that a multiplier is generally arrived at by comparing rentals to prices obtained for that item of property in established sales markets. Here, the comparison was to Xerox's *asking price* only, for there was no sales market. Second, there is no explanation of how the multiplier of 45 was arrived at. And, third, there is no explanation of why the two multipliers were averaged, other than the suggestion or inference that it was a compromise.

In comparing the gross rent multiplier method to the capitalization of income method adopted in 1970, it also appears that the assessment failed to take into account seemingly relevant factors such as leasing expenses, taxes, depreciation, or return on investment.

The 1969 assessment appears to have given consideration to a wider range of factors. Value was determined by averaging the product of a gross rent multiplier of 45 and the quotient of a capitalization rate of 33.6 percent. While no explanation was offered as to what the multiplier was based on, the "cap" rate did take into account expenses, return, and taxes.

The utilization of a 6-year useful life for determining the value of used copiers was based on the facts that (1) somewhat less than 10 percent of all Xerox copiers on lease were more than 4.5 years old, and (2) copiers of other manufacturers were assigned a 6-year useful life. Xerox challenges the use of a 6-year life on three grounds: (1) a 5-year useful life was used for purposes of income tax and accepted by the Internal Revenue Service, (2) in 1970 the state ultimately adopted a 5-year life, and (3) the comparison with other copiers was invalid for the reason they were marketed on a sales basis and not a lease basis. In a letter from Xerox to the Minneapolis city assessor's office, Xerox stated that, because of the rapid obsolescence of copier equip-

ment, any copier which was returned to it and 3 years old or older was not re-leased but rather sent to its factories for reconditioning and upgrading. While the city assessor testified that past returns listing the age of leased copiers had been considered, no evidence was introduced as to what the pattern was in those years.

With the possible exception of the 1969 assessment with respect to the method of valuation (which was suggested by Xerox and adopted by Hennepin County), Xerox through the cross-examination of those responsible for the contested assessments appears to us to have established that the county failed to give consideration to all the relevant factors affecting the value of the copiers, both new and used. That rebuts the prima facie validity of the assessed value (Crossroads Center, Inc. v. Commr. of Taxation, 286 Minn. 440, 176 N. W. 2d 530 [1970]; Alstores Realty, Inc. v. State, 286 Minn. 343, 176 N. W. 2d 112 [1970]; Schleiff v. County of Freeborn, 231 Minn. 389, 43 N. W. 2d 265 [1950]), and additional testimony or evidence would be required to support the trial court's findings upholding the assessed value. Any other substantial evidence which would do so is wholly lacking in the record.

While Xerox has successfully impeached the methods of valuation utilized by Hennepin County, it did not establish by direct evidence that the value placed on its copiers was excessive. Rather, it relied on the inference to be drawn from the discrepancies between the 1968, 1969, and 1970 valuations, contending that not all three can be correct (but the 1970 valuation is the most correct because it is based on the only proper method of valuation).

Xerox suggests that the court remand the case for a determination of value according to the method of valuation utilized in 1970. However, there is no testimony that the components making up the "cap" rate utilized in that method were appropriate for the years 1968 and 1969. Presumably, there may be

some changes required in factors such as expenses and expected rate of return.

Accordingly, we deem it necessary to reverse and remand with instructions to the trial court to find that the taxpayer has successfully rebutted the prima facie validity of the assessments, so the only issue to be retried is for the court to determine the true market value of the subject property for the tax years 1968 and 1969.

Reversed and remanded with instructions.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.