XEROX CORPORATION *v.* BOARD OF TAX REVIEW OF THE CITY OF HARTFORD

COTTER, LOISELLE, BOGDANSKI, LONGO and HEALEY, Js.

Argued April 11—decision released June 20, 1978

*Harry L. Nair* and *Valentine J. Sacco,* for the appellant (plaintiff).

*Richard M. Cosgrove,* acting corporation counsel, for the appellee (defendant).

BOGDANSKI, J.  The plaintiff, Xerox Corporation, appealed to the defendant board of tax review from the tax assessments of its personal property located in the city of Hartford for the years 1971 through 1974.  The board refused to reduce the assessments, and the plaintiff appealed to the Court of Common Pleas.  The court referred the matter to a referee, who, exercising the powers of the court, ordered the appeal dismissed.  From that judgment, the plaintiff appealed to this court assigning error in the overruling of its claims of law and error in the court's finding and conclusions.

The plaintiff is a manufacturer of office duplicating machines which it sells or leases to the public. A customer may lease the machines by paying a fixed rental fee, service charges, and charges based on the extent of the lessee's use.  Yearly models of the machines tend to become obsolete in about five years owing to constant improvements made on the machines.  Because of this fact, most of the plaintiff's machines are leased rather than sold to customers.

On July 1, 1971, the plaintiff was the owner of personal property located in the city of Hartford, consisting of 728 Xerox duplicators leased to customers.  On the 1972 assessment date, the plaintiff had 847 such leased units in Hartford; 968 in 1973; and 808 in 1974.  Most of the machines in Hartford at the above assessment dates were man-

ufactured in various years between 1966 and 1973. A small number, however, were manufactured prior to 1966.

The assessor found the value of the plaintiff's property leased in Hartford for the year 1971 at $4,529,600; for 1972 at $4,313,600; for 1973 at $4,800,500; and for 1974 at $3,397,500. He established those figures upon the basis of the list price maintained by the plaintiff for each machine and by deducting therefrom an appropriate amount for depreciation.

A taxpayer who believes he has been aggrieved by the action of a board of tax review has a right of appeal pursuant to § 12-118 of the General Statutes to the Court of Common Pleas where the matter is tried de novo. *Sibley* v. *Middlefield,* 143 Conn. 100, 106, 120 A.2d 77. Section 12-118 provides, in part, that "[t]he court shall have power to grant such relief as to justice and equity appertains," but the burden is on the plaintiff to show that it is aggrieved by the action of the assessor and that its property has been overassessed. *New Haven Water Co.* v. *Board of Tax Review,* 166 Conn. 232, 234, 348 A.2d 641; *Bridgeport Gas Co.* v. *Stratford,* 153 Conn. 333, 337, 216 A.2d 439.

At the trial the plaintiff contended that capitalization of income was the appropriate method of valuation of its leased property and offered in evidence its own statistics and formula in support of such a method. The trial court, however, found that the plaintiff's evidence was not credible and was insufficient to sustain its burden of proof; that the assessor considered all of the accepted methods for valuing the plaintiff's property and reasonably determined that neither a cost nor a capitalization

of income method was reliable; that the assessor valued the property at the prices for which the plaintiff offered and sold the items to willing customers in the open market and that the plaintiff never sold its machines below its list price; that the depreciation schedule adopted by the assessor was appropriate; and that the assessments were fair and reasonable.

We first address ourselves to the error directed at the court's refusal to find facts claimed to be admitted or undisputed. A fact is not admitted or undisputed merely because it has not been contradicted. The question of credibility is for the trier. *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274. Moreover, facts which are not material and could not affect the result cannot be added to the finding. *Rushchak* v. *West Haven,* 167 Conn. 564, 566, 356 A.2d 104. No corrections can be made to the finding which would benefit the plaintiff in presenting the questions of law which it wishes to have reviewed by this court.

The plaintiff's principal claim is that the court erred in sustaining the assessor's valuation based on the plaintiff's list prices. The plaintiff makes a two-pronged argument: (1) that such list prices do not represent the true and actual value because of an insignificant number of sales at such prices; and (2) that the capitalization of income method should have been adopted by the assessor.

Section 12-63 of the General Statutes requires that "[t]he present true and actual value of . . . property shall be deemed by all assessors and boards of tax review to be the fair market value thereof and not its value at a forced or auction sale." Fair market value is "the price that would

probably result from fair negotiations between a willing seller and a willing buyer." *Connecticut Printers, Inc.* v. *Redevelopment Agency,* 159 Conn. 407, 410, 270 A.2d 549. Fair market value means "a value in a market, in a place or in conditions in which there are, or have been or will be . . . willing sellers and able and ready buyers of property like that to be assessed, and in which sales are or have been made, or may fairly be expected, in the usual and natural way of business." *Underwood Typewriter Co.* v. *Hartford,* 99 Conn. 329, 336, 122 A. 91; *Portland Silk Co.* v. *Middletown,* 125 Conn. 172, 174, 4 A.2d 422. Actual value, market value, or market price means the price of an article established by sales in the course of ordinary business. *Connecticut Savings Bank* v. *New Haven,* 131 Conn. 575, 582, 41 A.2d 765.

The court's conclusions are tested by the finding; *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645; and a finding is tested by the evidence printed in the appendices to the briefs. Practice Book, 1963, § 628M; *State* v. *Vars,* 154 Conn. 255, 258, 224 A.2d 744. The court's finding, which is amply supported by the evidence in the appendix, reveals that the list price was fixed and maintained by the plaintiff for each type and model of the duplicator equipment; that the plaintiff would not sell any of its duplicators for less than the list price maintained by it; and that during 1971, 1972, and 1973 there were 1701 sales of the plaintiff's equipment throughout the country, including three sales in Hartford and seven sales throughout Connecticut, all of which were made at the plaintiff's list prices. The court further found that no claim was made that the purchasers were not willing buyers. Those findings reasonably support the court's conclusion that the assessments

based on a list price valuation were fair and reasonable and that the evidence as to the number of actual sales of the plaintiff's machines was sufficient to support the assessor's determinations.

" 'No one appraisal method was controlling on [the court]. . . . [It] had the right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as [it] found applicable. . . . The exercise of this right would be reviewable only if it were apparent that [the court] "misapplied or overlooked, or gave a wrong or improper effect to, any test or consideration which it was [its] duty to regard." ' " *Lynch* v. *West Hartford,* 167 Conn. 67, 76, 355 A.2d 42; *Stanley Works* v. *New Britain Redevelopment Agency,* 155 Conn. 86, 99, 230 A.2d 9. In the light of the evidence before it, the court did not err in sustaining the assessor's determinations as to fair market value based upon the plaintiff's list prices and actual sales.

The plaintiff has also assigned error in the court's conclusion that the depreciation schedule adopted by the assessor was fair and reasonable. The plaintiff argues that there is no factual basis to support that conclusion.

The evidence in the appendix to the briefs reveals that Alexander Standish testified that he was an assistant city assessor of the city of Hartford for ten years and acting city assessor for two years and that he is certified by the Connecticut Assessors Association; that his experience in appraising goes back twenty years and that he has testified in the courts of Connecticut and New Hampshire as an appraiser; and that his background includes courses in economics, law and appraisal as well as an

advanced course in income capitalization given by the Society of Real Estate Appraisers. He stated that the schedule of depreciation in the Xerox case was the result of a study by an auditor for the city of Hartford, and that he personally revised that schedule so that the percentage of list prices actually assessed was 95 percent for the first year, 90 percent for the next two years, 70 percent for the fourth year, 50 percent for the fifth year and 30 percent for the sixth year.

Frank Damiano testified that he was an auditor in the Hartford assessor's office for the years 1972 and 1973 and that he worked up the Xerox depreciation schedule. His studies of all kinds of equipment leased by large equipment leasing companies led to his conclusion that the plaintiff's equipment had a useful life of five to seven years. He then used a modified straight line method of depreciation to discount the value of the plaintiff's machines for assessment purposes.

Because the credibility of witnesses is a matter within the province of the court and because the evidence in the appendices could reasonably constitute a factual basis for the court's conclusion that the depreciation schedule was fair and reasonable, the conclusion cannot be disturbed.

There is no error.

In this opinion the other judges concurred.