[No. 45902. En Banc. September 18, 1980.]

XEROX CORPORATION, *Respondent*, v.
KING COUNTY, *Appellant*.

*Norm Maleng, Prosecuting Attorney,* and *William C. Severson* and *Susan R. Agid, Deputies,* for appellant.

*Bogle & Gates,* by *D. Michael Young* (*John D. Hussey,* of counsel), for respondent.

BRACHTENBACH, J.—This appeal involves taxation of personal property. The taxpayer paid its taxes under protest and sued for a refund pursuant to RCW 84.68.020. The trial court found that the assessor had used a fundamentally wrong method of valuation, adopted a different method which reduced the assessor's value by 16.6 percent, resulting in a refund of $68,864.84. Both parties appeal. We affirm.

Xerox, the taxpayer, manufactures, sells, and leases photocopiers and related equipment. Virtually all of these copiers are on lease though most carry a list price and can be purchased. In the pertinent year, in King County, there were 2,658 leased copiers; only 3 were sold. In that year,

only 2 additional units were sold in the entire state of Washington.

To value the copiers, as to those models which had a list price, the assessor utilized the list price as of the date of manufacture and depreciated them by applying a trended depreciation table. That table contains two elements: (a) estimated loss of value due to depreciation, and (b) an estimated increase in value due to an increase attributable to the impact of inflation upon the replacement cost of the machines. This method produced some bizarre results in that the assessor's value exceeded by substantial amounts the current list price of comparable machines.

■ The trial court found three errors in this approach. (1) Use of a list price in the absence of sufficient sales at such price was not a reliable indicator of market value; (2) use of the manufacturing date list price when current list prices were available was improper; and (3) use of an inflationary trending factor when in fact list prices were being reduced rather than increased was likewise erroneous. The court made a finding of fact as to the existence of these errors. The trial court detailed these errors in a finding of fact to which no error is assigned by the County. Thus the error of the county assessor becomes an established fact.

For machines without list prices, the assessor multiplied the monthly rent by 45 times to estimate new value and then applied the depreciation table. The court found this to be erroneous as there was no convincing evidence in the record to support it. While error is assigned to this finding, a review of the record demonstrates that there was no evidence to support the application of this theory to this taxpayer by the assessor.

As to the method of valuation, the court found that neither party contended for nor did the evidence support a value based upon reproduction or replacement cost. This left the court with the third recognized method of appraisal, the capitalization of income approach.

■ The County attacks the capitalization yield factor adopted by the trial court, which was 12 percent, claiming

that it was speculative and unreliable. Suffice it to say there was extensive evidence supporting this conclusion, given by two experts with vast experience in appraisal work. The trial court was entitled to and did believe this expert testimony. We cannot substitute our evaluation for that of the trial judge. *State v. Siler,* 79 Wn.2d 789, 792, 489 P.2d 921 (1971).

The County claims that the taxpayer's experts accounted for the risk due to obsolescence and competition doublefold by relating it to economic life and to the yield rate. The trial court rejected that argument. No authority is presented by the County. Again we do not substitute our judgment for that of the trial court.

The same is true of the County's argument that one of Xerox's experts deducted excessive expenses in arriving at the net income stream.

However, bearing on the general issue is the question whether the trial court applied its valuation at the correct "trade level." The trade level concept is merely a factor in the appraisal technique seeking to establish market value. The principle is that tangible property normally increases in value as it progresses through production and distribution channels.

The County mounts an extensive attack based upon this concept, contending that the taxpayer's experts erred in failing to value the leased copiers in the hands of the consumer, *i.e.,* the lessee. The experts and the court looked to an income capitalization from the income stream to the lessor, Xerox.

There is no statute which mandates use of the trade level concept as an appraisal benchmark. The only authority relied upon by the County is WAC 458–12–310 which recognizes the principle. It states that the trade level concept shall be *considered.* It states that tangible personal property *normally* attains its maximum value as it reaches the consumer level. In a statement distinguished by its lack of clarity, it states that the finished goods "held for lease or

rental shall be valued at the trade level of the principal user, *usually* cost to retailer or consumer." (Italics ours.)

We recognize that the trade level concept is an appraisal principle, but refuse to become embroiled in its application in this case. The taxpayer's experts applied the principle in a manner they believed was correct.

It was a matter of judgment by an expert applying a recognized theory. Just as an expert exercises judgment in choosing what he considers a comparable property for market value purposes, so does the expert determine the appropriate trade level to fix market value. The trial court may find the reasons, explanation and result convincing or not. Here the court, clearly recognizing and understanding this appraisal principle, accepted the level which the taxpayer's experts considered appropriate. Again we cannot substitute our judgment for that of the trial court.

We do note that the application of an income capitalization appraisal for machines in the possession of the lessees would appear to be an impossible task. The most identifiable income stream is to Xerox. While the record is deficient as to the identity of the lessees–users, we all know that these machines are used by entities which do not contemplate revenue generation per se. For example, how would one capitalize the income for the courts, a school district, a health district, or the various other governmental entities which use these leased machines?

The County contends that the taxpayer did not meet its proper burden of proof to overcome the presumption that the assessment was correct. Further, it argues that the taxpayer did not prove that the property was so grossly overvalued that it constituted a constructive fraud upon the taxpayer.

 We have stated the rule to be:

It is established law in this state that courts will grant relief from a grossly inequitable and palpably excessive overvaluation of property for taxation as constructively fraudulent, even though the assessing officers may have proceeded in good faith.

*Boise Cascade Corp. v. Pierce County,* 84 Wn.2d 667, 672, 529 P.2d 9 (1974).

However, we have conflicting language in our opinions as to the applicable standard when it is found that the assessor proceeded on a fundamentally wrong basis.

In *Samish Gun Club v. Skagit County,* 118 Wash. 578, 580, 204 P. 181 (1922), we said:

> It is well settled in this state, as said in *Weyerhaeuser Timber Co. v. Pierce County,* 97 Wash. 534, 167 Pac. 35 [(1917)], that where the assessing officer in making an assessment "proceeded upon a fundamentally wrong basis or theory in making the assessment, the courts will grant relief against an overvaluation of real property, and this regardless of the action of the board of equalization in the premises."

*Accord, Metropolitan Bldg. Co. v. King County,* 62 Wash. 409, 412, 113 P. 1114 (1911).

To be contrasted is the language in *Ozette Ry. v. Grays Harbor County,* 16 Wn.2d 459, 467, 133 P.2d 983 (1943). There the court said:

> The mere fact that the assessing officers have proceeded on a fundamentally wrong basis or that the assessment is excessive is not of itself alone sufficient to justify the intervention of the courts at the instance of the taxpayer. Before a court of equity will grant relief against the acts of such officers, it must clearly appear that the assessment is so palpably exorbitant and excessive as to amount to constructive fraud or to violate some constitutional principle.

Intertwined with this question is the holding in *Dexter Horton Bldg. Co. v. King County,* 10 Wn.2d 186, 217, 116 P.2d 507 (1941), where the court stated:

> There is no fixed rule as to the disparity required between the value fixed by the assessing officials and the value found by the court to establish constructive fraud.

*See* 12 Wash. L. Rev. 205 (1937). The error in this case was found by the trial court to be $3,146,427, or 16.6 percent.

The problem is complicated by the applicable statute, RCW 84.40.0301(1), enacted in 1971. It provides:

(1) Upon review by any court, or appellate body, of a determination of the valuation of property for purposes of taxation, it shall be presumed that the determination of the public official charged with the duty of establishing such value is correct but this presumption shall not be a defense against *any* correction indicated by clear, cogent and convincing evidence.

(Italics ours.)

We hold that when the assessor proceeds to assess on a fundamentally wrong basis, the statute mandates *any* correction indicated by clear, cogent and convincing evidence. Thus the correction need not be so great as to be a constructive fraud. Language to the contrary in prior cases is overruled. Certainly a three million dollar error arrived at on a fundamentally wrong basis deserves correction.

The taxpayer cross–appeals. First it argues that there is no substantial evidence to support the court's finding that the assessed machines had an economic life of 6 years rather than the 5 years as supported by the taxpayer's experts. The other issue is the use of an appraisal expense component of a 2 1/2 percent tax rate rather than 3 percent as urged by the taxpayer.

■ After reviewing the record, we conclude that there is substantial evidence to support both findings. The taxpayer argues that the data used by the County's expert to reach his opinion of a 6–year economic life does not support that conclusion. The trial court, fully aware of the taxpayer's argument, chose to accept the 6–year life opinion. Once more we cannot substitute our judgment even though we might not have been persuaded by the testimony.

The same is true for the tax rate opinion. There was conflicting but substantial evidence for both rates.

Judgment affirmed.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, HOROWITZ, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.