## XEROX CORPORATION, Appellant,

v.

## The BOARD OF REVIEW OF the CITY OF CEDAR RAPIDS, Iowa, Appellee.

### No. 64262.

Supreme Court of Iowa.

Nov. 12, 1980.

Frank W. Davis, Jr., and David L. Charles of Gamble, Riepe, Burt, Webster & Davis, Des Moines, for appellant.

David F. McGuire, City Atty., and Lynda E. Thomsen, Asst. City Atty., for appellee.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

LeGRAND, Justice.

By this appeal Xerox Corporation challenges both the method used and the result obtained in assessing the tax to be levied on personal property for the years 1975 and 1976. Suits were brought separately for each of the two years involved; they were consolidated for trial and come to us as a single appeal. We affirm the trial court.

Xerox is no stranger to such litigation. It has prosecuted similar appeals in a number of states with mixed results. Typical of these are *Xerox Corporation v. Board of Tax Review*, 175 Conn. 301, 397 A.2d 1367, 1369–71 (1978) (sales price formula used); *Xerox Corporation v. County of Hennepin*, 309 Minn. 239, 244 N.W.2d 135, 137 (1976) (insufficient sales experience for use of sales price formula); *Xerox Corporation v. City of Jackson*, 328 So.2d 330, 331 (Miss. 1976) (sales price formula used); *Xerox Corporation v. King County*, 617 P.2d 412 (Wash. 1980) (capitalization of income approach approved). *See also Mohawk Data Sciences Corporation v. City of Detroit*, 63 Mich.App. 102, 234 N.W.2d 420, 423 (1975) (list price valuation unrealistic). These cases are of limited application because of differences in the taxing statutes of the various states. They are cited to show the problem confronting us is by no means unique.

Using the sales comparison or sales price approach (referred to in the record also as the Market Data method), the city assessor valued the Xerox property for 1975 at $2,184,822 and for 1976 at $1,999,035. Xerox appealed to the board of review, which affirmed the assessor. It then appealed to the district court, where again the assessment was upheld.

Our review is de novo, and Xerox is limited to the objections originally relied on in its protest to the board of review. *Equitable Life Insurance Company of Iowa v. Board of Review*, 281 N.W.2d 821, 823 (Iowa 1979). We set out those objections in full. They are identical in each case:

There is error and fraud in the assessment of the equipment owned by Xerox

and subject to assessment for property tax purposes by the City Assessor, and said assessment of said equipment is excessive, arbitrary and capricious and violates the provisions of U.S. Const., Art. I., Sec. 8; U.S. Const., Amend. XIV, Sec. 1; Iowa Const. Art. I, Sec. 6; Iowa Const., Art. III, Sec. 30; Iowa Const., Art. VIII, Sec. 2 and Code of Iowa Sec. 441.21 (1973), for the following reasons:

a. The City Assessor determined the actual value of said equipment by utilizing the commercial list price of said equipment, or a derived commercial list price thereof, as an indicator of the sale price thereof.

b. The commercial list price of said equipment, or a derived commercial list price thereof, is not an indicator of the sale price thereof for the reason that the same does not reflect sale price in normal transactions reflecting market value and the probable availability or unavailability of persons interested in purchasing said equipment.

c. The actual value of said equipment can not be determined from sale price.

d. The City Assessor did not determine the actual value of said equipment by utilizing the best indicator of the actual thereof which was and is capitalized net rental therefrom.

Thus it is apparent the only "error and fraud" relied on is the assessor's use of the sales price test to arrive at the assessment. Xerox steadfastly contends this does not reflect the actual or market value of the property and that the proper measure is the income capitalization approach.

Xerox is a pioneer in the field of office copying and duplicating machines. The machines are generically denominated as mainframe equipment, which includes both copiers and duplicators. Originally Xerox put its equipment out on lease only. Beginning in 1963 Xerox permitted its mainframe equipment to be purchased. This was done under governmental urging, although Xerox still prefers a leasing arrangement. All sales were at prices established by Xerox for the various models. Thomas S. Morse, manager of property tax operations for Xerox, testified the list prices were established "to meet the demand of the market place." Xerox concedes that the prices fixed represent the fair value of the mainframes and that the equipment is not overpriced.

Most of Xerox's business continues to be on a lease basis. Sales were usually under "special circumstances" and were limited generally to four categories of purchasers— governmental agencies; high volume users; those with capital funds but limited operating budgets; and those who for security reasons needed complete control of the machines. Separate prices were established for government customers and nongovernment customers. The latter paid approximately 5 per cent more than the former.

At the time in question, Xerox had manufactured thirteen different mainframe models. Each had a list price established by Xerox. As of January 1, 1976, Xerox had manufactured 906,143 units of mainframe equipment. Of these 364,581 had been sold or retired as obsolete, 425,362 were on lease and 115,939 were available for lease. Xerox sells only new equipment. This includes reconditioned equipment with a new built warranty.

Mr. Morse testified no machines were ever sold for less than the established list price. This is true no matter where the sale was made. In 1975 (the first of the two years involved here) there were 3,714 units sold in the United States. Only three were sold in Cedar Rapids. There were a few other scattered sales in Iowa.

Using the price list supplied by Xerox, the assessor arrived at the actual value of the mainframe equipment, depreciated it on an eight year life, with a residual value of 25 per cent. He claims, and the district court found, that this conformed to the requirements of section 441.21 of The Code 1975, which we set out in part as follows:

1. All real and tangible personal property subject to taxation shall be valued at its actual value which shall be entered opposite each item, and shall be assessed at one hundred percent of such actual

value, and such value so assessed shall be taken and considered as the assessed valued and taxable value of such property upon which the levy shall be made.

The actual value of all property subject to assessment and taxation shall be the fair and reasonable market value of such property. "Market value" is defined as the fair and reasonable exchange in the year in which the property is listed and valued between a willing buyer and a willing seller, neither being under any compulsion to buy or sell and each being familiar with all the facts relating to the particular property. Sales prices of the property or comparable property in normal transactions reflecting market value, and the probable availability or unavailability of persons interested in purchasing the property, shall be taken into consideration in arriving at its market value. In arriving at market value, sale prices of property in abnormal transactions not reflecting market value shall not be taken into account, or shall be adjusted to eliminate the effect of factors which distort market value, including but not limited to sales to immediate family of the seller, foreclosure or other forced sales, contract sales, discounted purchase transactions or purchase of adjoining land or other land to be operated as a unit.

. . . . .

Notwithstanding any other provision of this section, the actual value of any property shall not exceed its fair and reasonable market value.

. . . . .

In the event market value of the property being assessed cannot be readily established in the foregoing manner, then the assessor may consider its productive and earning capacity, if any, industrial conditions, its cost, physical and functional depreciation and obsolescence and replacement cost, and all other factors which would assist in determining the fair and reasonable market value of the property but the actual value shall not be determined by use of only one such factor.

Xerox used two experts to establish actual or market value, and to demonstrate the sales price test is inappropriate. They described the three accepted methods of appraising property–sales comparison, replacement cost, and income capitalization. They both testified it was impossible to use the sales price approach because of insufficient data and because the few sales which were made were not "normal transactions reflecting market value."

We set out the values fixed by the assessor and by each of Xerox's experts:

1975

| | Sales Price Method | Replacement Cost Method | Income Capitalization Method | Final Value |
|---|---|---|---|---|
| Assessor | $2,184,822 | not used | not used | $2,184,822 |
| Dr. Wm. N. Kinnard | not used | not used | $1,248,135 | $1,248,135 |
| Max P. Arnold | not used | $1,501,609 | $1,382,633 | $1,382,633 |

1976

| | Sales Price Method | Replacement Cost Method | Income Capitalization Method | Final Method |
|---|---|---|---|---|
| Assessor | $1,999,035 | not used | not used | $1,999,035 |
| Dr. Wm. N. Kinnard | not used | not used | $1,205,238 | $1,205,238 |
| Max P. Arnold | not used | $1,391,167 | $1,296,647 | $1,296,647 |

The assessor used only the sales price method; Dr. Kinnard used only the income capitalization method; and Mr. Arnold used the replacement cost and the income capitalization methods. Both Dr. Kinnard and Mr. Arnold eschewed the sales price method, although it was "considered" in arriving at the value under the income capitalization formula.

■ Our statute provides alternative methods for fixing value; but the sales price method must be first used. Only if market value cannot be thus established may other permissible formulas–replacement cost or income capitalization–be utilized. *Equitable Life*, 281 N.W.2d at 823; *Bartlett & Company Grain v. Board of Review*, 253 N.W.2d 86, 87 (Iowa 1977); *Maytag Company v. Partridge*, 210 N.W.2d 584, 587 (Iowa 1973).

Of the cases from other jurisdictions heretofore cited, the most comparable is *Xerox Corporation v. Board of Tax Review*, 175 Conn. 301, 397 A.2d 1367 (1978). The Connecticut statute provides that property other than real estate shall be assessed at "the present true and actual value ... [which] shall be deemed by all assessors and boards of tax review to be the fair market thereof and not its value at a forced or auctioned sale."

The Connecticut Supreme Court (over the same objections which are made in the present case) approved an appraisal arrived at by using the price list which Xerox had furnished. It is particularly significant there had been only three sales in Hartford and seven sales in Connecticut; but the court recognized there had been many sales throughout the country, all at the list prices established by Xerox. *See* 397 A.2d at 1370. The Connecticut Supreme Court noted that the "assessor valued the property at the prices for which the plaintiff offered and sold the items to willing customers in the open market; that Xerox never sold its machines below its list price; that the depreciation schedule adopted by the assessor was appropriate; and that the assessments were fair and reasonable." 397 A.2d 1369.

In *Xerox Corporation v. City of Jackson*, 328 So.2d 330, 332–33 (Miss. 1976), the court rejected the argument that the market data (sales price) approach could not be used because only one copying machine had been sold compared to 647 which had been leased. Xerox contended there, as here, that "in Xerox's unique situation this [income capitalization] method was the more reliable and accurate in arriving at actual cash value."

The Mississippi Supreme Court nevertheless found the assessed value was properly computed on the amount Xerox would be willing to accept on sale of the equipment—the list price it had established.

We agree with the rationale of the Connecticut and Mississippi decisions. The arguments against the sales price method of appraisal are baseless. Xerox seeks to limit consideration to sales made in Cedar Rapids or, perhaps, Iowa in order to show a lack of sales experience. While this might be proper in some cases, it is manifestly not so here. Every sale by Xerox is a comparable sale because *every* sale—no matter where made or to whom—was at the same inflexible price.

In this regard it is interesting to note Dr. Kinnard used Xerox's *national* experience when testifying about rentals and service. However, he was careful to restrict his testimony concerning sales to those made in the Cedar Rapids area.

The further argument advanced by Xerox is equally untenable. It claims the sales made were "abnormal," thereby seeking to escape from the provisions of section 441.21, The Code 1975, which requires sales to be in "normal transactions." We find nothing in the record to justify any conclusion except that the sales made were between willing parties for a reasonable and fair value.

We are convinced the assessor was correct in taking the list prices established by Xerox as the actual value of the property, after allowing for depreciation. Once we arrive at this conclusion, Xerox's appeal must fail because its whole argument is anchored to the claim actual value could not be thus established.

The voluminous value testimony produced by Xerox would be impressive if we were free to choose from among the three accepted methods of appraising property. But that course is not open to us. This is what Xerox refuses to recognize.

It devoted almost its entire case to demonstrating there were better *methods* of determining actual value than the sales price formula. Even if we accept that premise arguendo, it would avail Xerox nothing. Good or bad, the sales price principle must be resorted to if possible. We have found it was correctly used here, and therefore the formidable testimony concerning other methods never becomes relevant.

We have not ignored the cases which disagree with our conclusions. *See Xerox Corporation v. County of Hennepin*, 309 Minn. 239, 244 N.W.2d 135, 137 (1976); *Xe-*

*rox Corporation v. King County*, 617 P.2d 412 (Wash. 1980); and *Mohawk Data Sciences Corporation v. City of Detroit*, 63 Mich.App. 102, 234 N.W.2d 420 (1975).

*Mohawk* is so different on its facts that it is of no significance. To the extent that the other cases depend on statutory differences, they are distinguishable; to the extent they do not, we believe they reach the wrong result.

We hold the actual or market value of the Xerox equipment for the years 1975 and 1976 was properly established by use of the sales price method. We hold further the judgment should be affirmed.

AFFIRMED.