BASKIN, Judge.
Appellee Blake, property appraiser for Metropolitan Dade County, assessed Xerox Corporation’s 1977 leased personal property taxes at $28,100,053. Xerox contested the assessment by filing an action against the property appraiser, the tax collector, and the Department of Revenue. In that action, Xerox contended that the appraiser should have utilized income capitalization[1] rather than depreciated list price in computing the taxable value of leased equipment. According to Xerox, the income capitalization method would have produced a lower assessment of $15,338,280. Pointing to the absence of an active sales market for the property and the fact that more than 98% of its Dade County customers preferred to lease rather than to purchase their equipment,[2] Xerox argued that income capitalization was the method the appraiser should have utilized.
At the conclusion of the trial, the court entered a final judgment and an amended final judgment in favor of appellees. The amended final judgment contained the court’s findings:
1. The Court finds that the Plaintiff failed to sustain its burden of proof that the Property Appraiser did not consider all the relevant factors under Florida Statutes 193.011.
2. The Court rejects the income approach used by Plaintiff’s experts as representing just or market value for the following reasons:
a) The approach failed to provide for salvage value.
b) The officer or agent of the Plaintiff admitted that the Plaintiff corporation would not sell its equipment at the prices indicated by its income approach.
3. The “List Price less depreciation method” used by the Property Appraiser more accurately reflected just value albeit that the amount of sales was small and the sales were not of all models of Xerox equipment.
4. The Property Appraiser did not abuse his discretion and the value set by the Property Appraiser did represent just or fair market value.
Xerox labels the utilization of the depreciated list price method inappropriate because the market consisted of only two percent of the customers to whom the property was offered. We agree and hold that the limited sales market for leased equipment necessitates adoption of the income capitalization approach; we therefore disapprove the depreciated list price method employed by the appraiser and remand with directions to employ the income method.
Article VII, section 4, of the Florida Constitution compels the just valuation of all property for ad valorem taxation. Courts have defined “fair market value” and “just valuation” as legally synonymous. Walter v. Schuler, 176 So.2d 81 (Fla.1965). The Supreme Court of Florida, in City of Tampa v. Colgan, 121 Fla. 218, 163 So. 577 (1935), described fair market value as the amount of money a purchaser “willing but not obligated to buy property would pay to an owner willing but not obligated to sell it,” observing that the price at which similar property is bought and sold is the best test of value unless there is no established market. In the absence of a sales market, however, valuation must be based upon consideration of all factors which influence intrinsic value. 121 Fla. at 231, 163 So. at 582. Accordingly, in Palm Corp. v. Homer, 261 So.2d 822 (Fla.1972), the court found that, even though the taxpayer had neglected to submit its income to the assessor, the assessor erred in failing to use available *1310 data applicable to the income or economic approach.
Our selection of the income approach rests on several principles. First, we agree that sales price alone is inadequate to determine just value.
The petitioner placed great reliance upon the apparent “sales price” of the items he submitted into evidence. There is no synonymity of “sales price” and “just value”. The sale price of property includes many factors of price increase which are not included in case value and which bear no relation to the property being sold. These would include the advertising and promotion expense, the brokerage, legal and documentary tax costs and a profit — either reasonable or unreasonable — to the owner of the property being sold. There can be no presumption that any given piece of property is going to be sold. Sales price alone cannot be the sole bedrock under the laws of this state on which fair market value is bottomed. Sales prices are much like Scripture; they can be used to prove — or disprove — almost anything, according to the viewpoint of the citator of such Scripture.
State ex rel. Colding v. Tax Assessor, 26 Fla.Supp. 104, 106 (Fla.20th Cir.Ct.1966); aff’d sub nom., State ex rel. Conboy v. Colding, 200 So.2d 246 (Fla.2d DCA), cert. denied, 204 So.2d 331 (Fla.1967).
Next, we observe that decisions by courts in other jurisdictions, which have addressed the adequacy of the number of Xerox sales, lend support for the conclusion we reach today. The decisions vary in accordance with the size of the market considered. Courts examining local markets have favored income capitalization; those reviewing the nationwide market have preferred list price minus depreciation. Finding in favor of Xerox and the income approach are: Xerox Corp. v. King County, 94 Wash.2d 284, 617 P.2d 412 (1980); Xerox Corp. v. County of Hennepin, 309 Minn. 239, 244 N.W.2d 135 (1976); finding against are: Xerox Corp. v. Board of Review of Cedar Rapids, 298 N.W.2d 416 (Iowa 1980); Xerox Corp. v. Board of Tax Review of the City of Hartford, 175 Conn. 301, 397 A.2d 1367 (1978); Xerox Corp. v. City of Jackson, 328 So.2d 330 (Miss.1976).
The courts in Minnesota and Washington, examining only local markets, deemed the sales too few in number to indicate market value. In King County, for example, the court pointed to five sales throughout the State of Washington; in County of Henne-pin, the court noted a total of four sales in Minnesota. In the Cedar Rapids case, on the other hand, the Supreme Court of Iowa dealt with nationwide sales of equipment at a fixed list price, and in Board of Tax Review of the City of Hartford, the Supreme Court of Connecticut ruled that 1,701 nationwide sales during a three-year period were sufficient to establish market value.[3]
In the case before us, the small number of sales leads us to conclude that list price does not represent just valuation and that the income capitalization method must be utilized. We base our decision not on the small number of sales in the local market alone, but on the fact that, both locally and nationally, Xerox sold only two to three percent of the copiers and accessories it offered for sale.
Our decision is reinforced by the fact that the income approach is recommended by the State of Florida in its Manual of Instructions Standard Measures of Value Pertaining to the Assessment of Tangible Personal Property and Inventory, which provides:
INCOME APPROACH
When reliable market or cost data is not available for like properties, greater emphasis falls on the capitalization of net income method of appraisal. This approach is not recommended unless the *1311 income stream is clearly defined and attributable to the personal property under appraisal, as in the case of leased equipment. (emphasis added).
For these reasons, we conclude that Xerox met its burden of proof:
The tax assessment is presumed to be correct and in order to sustain his burden of proof in challenging such assessment, the taxpayer must present proof which excludes every hypothesis of legal assessment.
Homer v. Dadeland Shopping Center, Inc., 229 So.2d 834, 837 (Fla.1969); Calder Race Course, Inc. v. Overstreet, 363 So.2d 631, 634 (Fla.3d DCA 1978); see generally Rystrom v. Equitable Life Assurance Society, 416 So.2d 1133 (Fla.3d DCA March 31, 1982). The trial court impliedly found that the appraiser considered the factors defined by law as necessary to achieve just valuation. § 193.011, Fla.Stat. (1975).[4] His review of the income factor should have forestalled the appraiser’s rejection of the income capitalization method because Xerox excluded every reasonable hypothesis of legality when it established the limited nature of the market supporting the appraisal. The absence of a foundation for the assessment shatters the presumption of correctness as a matter of law.
We hold that the absence of an established sales market for the Xerox equipment in question required the appraiser to utilize an income capitalization method as the only method which would assure a just valuation. Our decision does not necessarily approve the computations made by Xerox, however. On remand, the trial court may obtain the assistance of expert testimony or a special master competent in the analysis of cost-of-capital and cash-flow capitalization to compute an accurate assessment.
Reversed and remanded for further proceedings consistent with this opinion.

. The income capitalization method subtracts expenses from the amount of income the property is expected to produce. The remainder is then capitalized into present worth. Xerox maintains that this system produces average worth, which it contends is appropriate because its machines are not sold at list price.

. Xerox leases three types of equipment: copier duplication machines, copier duplication machine accessories, and other products. Only the valuation of the basic machines and their accessories is disputed.

. In City of Jackson, the court hesitated to approve income capitalization because it “is very complicated and subject to many variables that cannot be checked out by taxing authorities.” 328 So.2d at 333. Unlike the court in City of Jackson, we do not anticipate that the trial court will be unequal to the challenge of applying income capitalization, a procedure used extensively in real estate appraisals.

. Section 193.011, Florida Statutes (1975) states:
Factors to consider in deriving just valuation. — In arriving at just valuation as required under s.4, Art. VII of the State Constitution, the [property appraiser] shall take into consideration the following factors:
(1) The present cash value of the property;
(2) The highest and best use to which the property can be expected to be put in the immediate future and the present use of the property, taking into consideration any applicable local or state land use regulation and considering any moratorium imposed by executive order, law, ordinance, regulation, resolution, or proclamation adopted by any gov-emmental body or agency or the Governor when the moratorium prohibits or restricts the development or improvement of property as otherwise authorized by applicable law;
(3) The location of said property;
(4) The quantity or size of said property;
(5) The cost of said property and the present replacement value of any improvements thereon;
(6) The condition of said property;
(7) The income from said property; and
(8) The net proceeds of the sale of the property, as received by the seller, after deduction of all of the usual and reasonable fees and costs of the sale, including the costs and expenses of financing.