**McNEILUS TRUCK & MANUFACTURING, INC., Relator,**

v.

**COUNTY OF DODGE, Respondent.**

**No. A05–121.**

Supreme Court of Minnesota.

Nov. 10, 2005.

Rehearing Denied Dec. 30, 2005.

James H. Gilbert, Steven R. Hedges, James H. Gilbert Law Group, PLLC, Minnetonka, MN, Robert Hill, Robert Hill & Associates, Ltd., Minneapolis, MN, for Relator.

Kenneth R. Moen, Moen Law Firm, Rochester, MN, for Respondent.

Myron L. Frans, Mark D. Savin, John F. Beukema, Faegre & Benson, LLP, Minneapolis, MN, for Amici Curiae Minnesota Chamber of Commerce and National Association of Manufacturers.

## O P I N I O N

ANDERSON, G. BARRY, Justice.

Relator McNeilus Truck & Manufacturing, Inc. ("McNeilus") owns real estate located in Dodge County, Minnesota. McNeilus operates a large manufacturing plant in Dodge Center, and alleges that the Dodge County Assessor overvalued the McNeilus property for the tax years 2001 and 2002. Dodge County valued the property at $6,739,900 for 2001 and $6,743,900 for 2002. After trial, the Minnesota Tax Court held in favor of respondent Dodge County, concluding that McNeilus's real estate was valued at $8,800,000 as of January 2, 2001, and $9,000,000 as of January 2, 2002. *McNeilus Truck & Mfg. Inc. v. County of Dodge,* Nos. C4–03–287, C5–02–241, 2004 WL 1843041, at *1 (Minn. T.C. Aug. 6, 2004). The tax court found Dodge County's appraisal more persuasive, giving greater weight to the comparable sales utilized by respondent to arrive at its valuation. Further, the tax court, citing its own precedent, rejected the out-of-state sales comparisons offered by McNeilus, stating:

> We "will not accept comparables from outside Minnesota unless the circumstances warrant * * * and unless differences in the markets and tax rates are explained." For the reasons set forth below, we do not accept McNeilus's use of out-of-state comparables in this case.

*Id.* at *7 (citations omitted). McNeilus contends that the tax court erred when it rejected the use of out-of-state comparable sales based on an unpromulgated rule of evidence, and that the valuations of the tax court were clearly erroneous. We reverse and remand.

## I.

The property at issue in the appeal is a large light manufacturing facility in Dodge Center, Minnesota, 70 miles southeast of the Twin Cities and 25 miles from both Interstate 35 and Interstate 90. Buildings and improvements total approximately 645,734 square feet, and are of steel frame construction with steel siding. The facility is used to manufacture cement drums and refuse containers for use with cement and refuse trucks. The majority of the improvements are used for manufacturing, although some smaller structures are devoted to storage, research, development and office space.

Dodge County presented evidence of value through the expert testimony of certified appraiser Dennis W. Jabs. Jabs primarily employed a sales comparison approach to valuation, selecting ten comparable sales of large industrial properties resembling the subject property from a total of nearly fifty industrial sales. Jabs selected his comparables from the market he determined included the McNeilus plant, specifically, a market for large industrial manufacturing facilities centering at the intersection of Interstates 35 and 90, and extending across southern Minnesota, into northern Iowa and eastern South Dakota. The properties, nine in Minnesota and one in South Dakota, were of dissimilar sizes and uses. One comparable was a manufacturing facility much smaller than the subject property, four were warehouse distribution centers, and five were combination warehouse/manufacturing facilities. Two comparables were in the Twin Cities metro area, and several were close to interstate freeways. Jabs concluded that the highest and best use of the McNeilus property was manufacturing, but also considered that buyers often use light manufacturing space interchangeably for warehousing. But because warehousers are not willing to pay full value for some of the more costly manufacturing improvements that would not be used in a warehouse, Jabs adjusted the comparables involving warehousing down by 10%. Using five of these comparables, he arrived at a value of $9,350,000. Using all of the comparables, Jabs performed an alternative valuation analysis, considering the value of the property if split and sold in separate, smaller parcels. Using this approach, he came to a value of $8,850,000. Jabs gave the alternative approach lesser weight, and arrived at a sales approach valuation of $9,300,000 as of January 2, 2002.

Jabs also performed a cost approach analysis, beginning with the cost of replacing the improvements and then considering depreciation. Jabs performed this analysis building by building, as each building has different uses and characteristics. He concluded that the value of the property, using a cost approach analysis, was $9,200,000 as of January 2, 2002.

Relator McNeilus offered the expert testimony of certified appraiser Steven M. DeCaster. DeCaster utilized a sales comparison and a cost approach to valuation, using seven comparable sales from a market larger than that identified by Jabs. Unlike Jabs' comparables, all of DeCaster's comparables were pure manufacturing facilities. Two comparables, one in Hopkins, MN, and one in Chicago Heights, IL, were in large metropolitan areas. Two of DeCaster's comparables were in Minnesota and one was in Wisconsin. The remainder were in Illinois. All but one of DeCaster's comparables were at least 100 miles from Chicago. All were either of steel or steel and masonry construction. DeCaster made adjustments to account for age, location, size of the buildings, and quality of construction. He did not make any adjustments for local tax rates or mar-

ket conditions. Using these comparables, DeCaster arrived at a final sales valuation of $2,600,000 as of both January 2, 2001 and January 2, 2002. DeCaster also utilized an alternative cost approach to value, arriving at a value of $2,800,000 as of both dates.

## II.

The tax court, in rejecting DeCaster's out-of-state sales, stated, "we will not accept comparables from outside Minnesota unless the circumstances warrant * * * and unless differences in the markets and tax rates are explained." *McNeilus Truck & Mfg. Inc.*, 2004 WL 1843041, at *7. In its Order Denying Motion for Amended Findings and Conclusions of Law, the tax court cited *Huisken Meat Center, Inc. v. County of Murray*, Nos. C2–97–27, C8–95–271, 1998 WL 15131 (Minn. T.C. Jan. 14, 1998), among other decisions, as authority for rejecting foreign comparables. In *Huisken* the tax court stated that the basis for the rejection of out-of-state comparables was that those sales did not disclose "the market nor the effect of different tax rates to determine what adjustments, if any, should be made." *Id.* at *2. The tax court in the present case also cited *SPX Corp. v. County of Steele*, No. C1–00–350, 2003 WL 21729580 (Minn. T.C. July 23, 2003). There, the tax court refused to consider all 12 of relator's comparables, noting that "we will not accept comparables from outside Minnesota unless the circumstances warrant such an exception and unless differences in the markets and tax rates are explained." *Id.* at *5.

■ It is fair to say, viewing tax court precedent, that the tax court has created a de facto rule prohibiting the use of comparables from outside of Minnesota. But this informal rule against the use of sales transactions from states other than Minnesota, without further explanation, violates the tax court's obligation to use its independent judgment in evaluating all testimony and evidence before the court. *See Am. Express Fin. Advisors, Inc. v. County of Carver*, 573 N.W.2d 651, 658–59 (Minn. 1998) (holding that the tax court's out-of-hand rejection of certain testimony and exhibits that were part of the record was an abuse of discretion); *Red Owl Stores, Inc. v. Comm'r of Taxation*, 264 Minn. 1, 10, 117 N.W.2d 401, 407 (1962).

■ More specifically, application of a rule barring out-of-state comparables violates the tax court's duty to assess property at market value. The tax court is required to follow Minn.Stat. § 273.11, subd. 1 (2004), which provides that "all property shall be valued at its market value." Fair market value for property assessment purposes is the compensation which a willing purchaser not required to buy the property would pay to an owner willing but not required to sell it, taking into consideration the highest and best use of the property. *Ferche Acquisitions, Inc. v. County of Benton*, 550 N.W.2d 631, 634 (Minn. 1996); *see also* Minn.Stat. § 272.03, subd. 8 (2004).

When utilizing the comparable sales approach to valuation, the appraiser must "consider and give due weight to lands which are comparable in character, quality, and location, to the end that all lands similarly located and improved will be assessed upon a uniform basis and without discrimination." Minn.Stat. § 273.12 (2004). The appraiser must assess the actual market a hypothetical buyer of the subject property would look at, and consider comparable sales of properties in that market. The scope of the market depends on the kind of property being sold—two sales of land separated by great physical distance may nonetheless be comparable sales depending on the intended use of the property. For example, a buyer searching

for a distribution center to serve a national market for the buyer's products might consider properties located in places as far apart as Denver and St. Louis as similarly situated, whereas prospective buyers of a primary residence would likely limit their search to where the buyers presently live and work. Thus, what commentators have termed "economic proximity," and not mere physical proximity, makes two pieces of real estate comparable. J.D. Eaton, *Real Estate Valuation in Litigation* 209 (2d ed. 1995). The market real buyers examine is not always limited by distance or location, nor by state lines. Indeed, state lines might be practically invisible to certain purchasers of land. Such an arbitrary and artificial limit may not reflect market principles and creates grave risk of distorting property valuation.

Courts in other states have also rejected the notion that comparable sales may be ignored purely because they occurred across a political boundary. *See Bartlett & Co. Grain v. Bd. of Review of Sioux City*, 253 N.W.2d 86, 94 (Iowa 1977) (holding that sales of grain terminals in other states were comparable to subject grain terminal in Iowa because the nature of the market for the property encompassed a wider area than that bounded by state lines); *Great Atl. & Pac. Tea Co. v. Kiernan*, 42 N.Y.2d 236, 397 N.Y.S.2d 718, 366 N.E.2d 808, 813 (1977) (holding that where evidence showed that market for large food processing plants was regional, appraisers could rely on comparable sales in other states, and noting that a rigid rule regarding political boundaries would "abandon the economic realism which should characterize valuation").

Of course, as the tax court also recognized, adjustments to price may be necessary to account for differences in local tax rates and policies amongst comparable sales across state lines. But the same kinds of adjustments may need to be made with regard to comparable sales in different counties or different cities within Minnesota. There is nothing particularly salient about the *state* line that justifies what amounts to a presumption of noncomparability. While, all other things being equal, a Minnesota comparable is likely superior to an out-of-state comparable, effectively excluding out-of-state comparable sales is arbitrary and distorts valuation in contravention of the tax court's duty to assess fair market value and treat lands similarly situated on a uniform basis. Minn.Stat. §§ 273.11, 273.12. We hold that the tax court's de facto evidentiary rule barring out-of-state comparables violates the tax court's obligation to assess property at market value.[1]

### III.

■ But even where, as here, the tax court inappropriately excluded evidence, we will not reverse unless the exclusion materially prejudiced the appealing party. *Marquette Bank Nat'l Ass'n v. County of Hennepin*, 589 N.W.2d 301, 307 (Minn. 1999). But neither will we defer to the tax court's property valuation when the court "completely fail[s] to explain its reasoning." *Hansen v. County of Hennepin*, 527 N.W.2d 89, 93 (Minn.1995). In such a situation, we may remand to the tax court with instructions to reconsider the evidence and clarify its analysis. *See Renneke v. County of Brown*, 255 Minn. 244, 248, 97 N.W.2d 377, 380 (1959) (remanding tax court's property valuation with directions to make specific findings and explain reasoning).

1. We note, however, that this holding does not preclude the tax court from exercising discretion in the admission of evidence and excluding, in the appropriate case, out-of-state comparable sales on relevance or other grounds.

The tax court, in the present dispute, provided some alternative reasons for rejecting DeCaster's comparables and valuation. But many of these reasons also call into question the validity of Dodge County's appraisal. For example, the tax court criticized DeCaster's valuation because he did not address the differences between the out-of-state market and the market in Dodge Center, nor did he account for the impact of differing tax structures on the valuation of his out-of-state comparable sales. But the tax court did not similarly question Dodge County's out-of-state comparable in Brookings, South Dakota. Nor did the tax court require any account of the significantly differing local tax structures and market conditions between respondent's in-state comparables, which were located in communities as disparate as Eagan, Owatonna, Albert Lea, and Northfield.

Moreover, the tax court considered all of Jabs' comparables, despite the fact that all but one of those comparables were constructed using materials and methods different from the McNeilus property. Likewise, the tax court's opinion highlights environmental problems with De-Caster's comparables without noting that the McNeilus plant itself is subject to similar environmental issues and is designated by the Environmental Protection Agency and the Minnesota Pollution Control Agency as a high volume generator of hazardous wastes. Further, the tax court's opinion criticizes some of DeCaster's comparables but inexplicably fails to comment on the remainder. The tax court's alternative reasons, therefore, are insufficient and cannot support the tax court's property valuation analysis.

Because of the rejection of the evidence of value offered by McNeilus and the difficulties associated with the analysis given by the tax court on the remaining expert evidence, we are unable to reach a conclusion as to the appropriateness of the property valuation at issue here. Accordingly, we remand to the tax court with instructions to consider all properly offered and admitted comparable sale evidence and to apply the same standard to comparable evidence offered by either party and to evaluate in detail the expert evidence offered by both parties. We take no position as to the eventual outcome of this property valuation dispute.

Reversed and remanded.

BLATZ, C.J., ANDERSON, PAUL H., ANDERSON, RUSSELL A., MEYER, JJ., took no part in the consideration or decision of this case.

JESSEN, RICHARD T., Acting Justice (concurring).*

GROSS, BRUCE, Acting Justice.*

JESSEN, RICHARD T., Acting Justice (concurring).

I concur with the decision of the majority. However, I write to emphasize that there is no legal or economic basis to automatically exclude out-of-state comparables whether they are offered by either

---

* Appointed pursuant to Minn. Const. art. VI, § 2, and Minn.Stat. § 2.724, subd. 2 (2004).

or both parties. The phrase "out-of-state" should be omitted from footnote one of the court's opinion. There is no automatic distinction between in-state and out-of-state comparables.

The tax court's de facto rule does not automatically exclude out-of-state comparables, but it sets up a presumption against their use. In *SPX Corp. v. County of Steele*, No. C1–00–350, 2003 WL 21729580 (Minn. T.C. July 23, 2003), the tax court recognized that there may be exceptions to its exclusionary rule if the proponent of the out-of-state comparable can show that "the circumstances warrant such an exception and * * * differences in the markets and tax rates are explained." *Id.* at *5.

Here, on the one hand, the tax court cited its de facto rule to exclude McNeilus' out-of-state comparables, and, on the other hand, again citing its de facto rule, it admitted the evidence into the record, and then, using its rule as a presumption against out-of-state comparables but not in-state comparables, found that relator had not met its burden to show that circumstances warrant an exception and to explain the differences in the markets and tax rates. Further, the tax court did not hold respondent to the same standard when it presented evidence of an out-of-state comparable.

When utilizing the comparable sales approach to valuation, all factors relevant to determining market value should be considered and weighed and appropriate adjustments should be made for the differences in the comparable sales whether in-state or out-of-state. *See* Minn.Stat. § 273.12 (2004).