**SOUTHERN MINNESOTA BEET SUGAR COOP, Relator,**

v.

**COUNTY OF RENVILLE, Respondent.**

No. A07–394.

Supreme Court of Minnesota.

Aug. 23, 2007.

Robert A. Hill, Robert A. Hill & Associates, Ltd., James H. Gilbert James H. Gilbert Law Group, P.L.L.C., Eden Prairie, MN, for Relator.

Marc J. Manderscheid, Briggs & Morgan, Minneapolis, MN, for Respondents.

John F. Beukema, Faegre & Benson LLP, Minneapolis, MN, for Amicus Curiae, Minnesota Chamber of Commerce.

## OPINION

GILDEA, Justice.

Relator Southern Minnesota Beet Sugar Coop (SMBSC) contested the real property tax assessment of its sugar beet processing plant by respondent County of Renville (the county). After a trial, the Minnesota Tax Court concluded that neither party provided enough evidence to allow the court to determine the market value of the property. The court therefore affirmed the county assessor's estimated market value of the property. SMBSC petitioned this court for a writ of certiorari. We affirm in part, reverse in part, and remand to the tax court.

This dispute involves the sugar beet processing plant that SMBSC operates on approximately 621 acres of land in Renville County (the subject property). The subject property includes 31 buildings (ranging in size from just over 200 square feet to approximately 120,000 square feet), 30 tanks, bins, and silos of various sizes (ranging from capacities of 100,000 gallons to just over 7.6 million gallons), and numerous improvements (including railroad track and rail switches, paved areas for piling sugar beets, and four ponds totaling 110 acres). Many of the buildings, tanks, bins, and silos, and improvements were constructed in 1973 and 1974, so that the

facility could begin operating in 1975. Additional buildings were added sometime around 1990. SMBSC invested approximately $14.5 million for buildings, tanks, bins, and silos on the property between 1999 and 2002.[1]

The county assessed property taxes based on its conclusion that the subject property had an estimated market value of $20,168,500 on January 2, 2003, and $20,134,000 on January 2, 2004. SMBSC petitioned the tax court for relief from the county's real property tax assessment, contending that the estimated market value used by the county was greater than the subject property's actual market value and that the subject property was unequally assessed as compared to other property.

At trial, the parties disagreed about what property was subject to tax and about the market value of the subject property. SMBSC's witnesses contended that only some of the 30 tanks, bins, and silos on the subject property are taxable as real property, and its expert valued the property at $7.5 million. The county argued that all of the 30 tanks, bins, and silos are taxable as real property and that the market value of the property was $55 million.

The tax court concluded that all 30 tanks, bins, and silos on the property are taxable as real property. Specifically, the court concluded "[t]he thick juice storage tanks, concrete sugar storage silos, beet pellet storage bins, molasses storage tanks, fuel tanks, betaine tank, condenser tank, water tank, water clarifier, and ash tank, exclusive of equipment contained

therein" and "[t]he two-layered shell, roof, floor, and interior column of the Weibull bin" are taxable real property. *S. Minn. Beet Sugar Coop v. County of Renville*, Nos. C5–04–286 & CV–05–100, 2006 WL 3803470, at *3–4 (Minn. T.C. Dec. 22, 2006). The court also concluded that the subject property is a special purpose property. Id. at *4. The court concluded, however, that it could not "reach a well supported and reasonable determination as to the market value of the Subject Property based on the experts' extrapolations and incomplete analyses" because SMBSC's expert had not included an analysis as to all the "taxable components, such as the tanks, bins and silos and land improvements," and the county's expert had analyzed only one building "and from this extrapolated the replacement cost for the rest of the buildings." Id. at *13–14. The court therefore affirmed the Renville County Assessor's estimated market value of the subject property as $20,168,500 on January 2, 2003, and $20,134,000 on January 2, 2004. Id. at *3–4.

SMBSC appeals to this court, claiming that the tax court committed several errors. Specifically, SMBSC argues that the tax court erred when it (1) concluded that the tanks, bins, and silos on the subject property are taxable real property, (2) concluded that the subject property was special purpose property, (3) failed to make any findings with respect to the comparable sales evidence offered by SMBSC, (4) adopted the county assessor's valuation in the absence of "affirming evidence," and (5) failed to grant SMBSC relief on its unequal assessment claim.

---

1. As explained in the record, the process of making sugar from sugar beets at the plant starts with the gathering, washing, and slicing of the beets. Next, through a process of diffusion and carbonation, "thin juice" is extracted from the sliced beets. The thin juice is pumped through evaporators, yielding "thick juice." The thick juice is then typically stored in "thick juice tanks" until it is ultimately refined into sugar. Finally, the sugar is subjected to conditioning to remove excess moisture, which is done in sugar silos or in the "Weibull bin."

■ Our review of the final order of the tax court is limited. *Hutchinson Tech., Inc. v. Comm'r of Revenue*, 698 N.W.2d 1, 6 (Minn.2005). We determine only whether the tax court lacked jurisdiction, whether the tax court's order is supported by the evidence and is in conformity with the law, and whether the tax court committed any other error of law. Minn. Stat. § 271.10, subd. 1 (2006); *Jefferson v. Comm'r of Revenue*, 631 N.W.2d 391, 394 (Minn.2001). We review de novo the tax court's legal determinations. Hutchinson Tech., 698 N.W.2d at 6. But the tax court's factual findings are reviewed under a "clearly erroneous" standard. *200 Levee Drive Ass'n, v. County of Scott*, 532 N.W.2d 574, 576 (Minn.1995). Finally, we will not defer to the tax court's valuation decision where the court has " 'completely fail[ed] to explain its reasoning.' " *McNeilus Truck & Mfg., Inc. v. County of Dodge*, 705 N.W.2d 410, 414 (Minn.2005) (quoting *Hansen v. County of Hennepin*, 527 N.W.2d 89, 93 (Minn.1995)). If the tax court's reasoning is not explained in sufficient detail, we may remand to the tax court to reconsider the evidence and clarify its analysis. *See id.; see also Renneke v. County of Brown*, 255 Minn. 244, 248, 97 N.W.2d 377, 380 (1959) (remanding when there was no indication how the tax court determined the true market value of the property).

## I.

This case is about the market value of the subject property. But before determining the market value, we must address whether the tax court properly identified what property was subject to tax. At trial, the parties agreed that the land and the buildings on the land were taxable real property, but the parties disagreed about whether the 30 tanks, bins, and silos, and the improvements on the land were taxable real property.[2] The tax court concluded that the 30 disputed tanks, bins, and silos, "exclusive of equipment contained therein," are taxable real property. *S. Minn. Beet Sugar Coop*, 2006 WL 3803470, at *3–4.

By statute, all real property and personal property in this state is taxable unless otherwise exempt. *See* Minn.Stat. § 272.01 (2006). Minnesota Statutes § 272.03, subd. 1(a) (2006) broadly defines "real property" for the purposes of taxation: the term includes "the land itself, rails, ties, and other track materials annexed to the land, and all buildings, structures, and improvements or other fixtures on it." Subdivision 1(c)(i) of the statute, however, limits the broad definition in subdivision 1(a) by excluding from the definition of real property "tools, implements, machinery, and equipment attached to or installed in real property for use in the business or production activity conducted thereon, regardless of size, weight or method of attachment."

■ But in 1985 the legislature limited the scope of the exclusion in subdivision 1(c)(i) through the adoption of subdivision 1(c)(iii). This provision operates as an exception to the exclusion and provides:

> The exclusion provided in clause (i) does not apply to the exterior shell of a structure which constitutes walls, ceilings, roofs, or floors if the shell of the structure has structural, insulation, or temperature control functions or provides protection from the elements. Such an exterior shell is included in the definition of real property even if it also has special functions distinct from that of a building.

2. On appeal, SMBSC has not argued that the improvements on the property (such as the ponds) are not taxable real property. We therefore do not address that question.

Minn.Stat. § 272.03, subd. 1(c)(iii) (2006). We have not had the opportunity to address subdivision 1(c)(iii). We have, however, said that statutory provisions that exempt property from taxation should be strictly construed. *E.g., ILHC of Eagan, LLC v. County of Dakota,* 693 N.W.2d 412, 419 (Minn.2005). A logical corollary to that general rule is that exceptions (such as subdivision 1(c)(iii)) to exclusion provisions (such as subdivision 1(c)(i)) should be broadly construed.

Reading section 272.03, subdivision 1 in its entirety reveals that three steps are necessary to determine whether the 30 tanks, bins, and silos at issue in this case are taxable real property. The first step is to determine if the property at issue falls within the broad definition of real property in subdivision 1(a). The second step is to determine whether the exclusion in subdivision 1(c)(i) applies. And the third step is to determine whether the exception to the exclusion, set forth in subdivision 1(c)(iii), applies.

■ Turning to the first step, we have previously noted that the definition of real property in subdivision 1(a) is broad enough to include some objects that resemble equipment. *See Barton Enters., Inc. v. County of Ramsey,* 390 N.W.2d 776, 777 (Minn.1986) (concluding that even though the oil tanks might be classified as "tools, implements, machinery, and equipment," the tanks are real property and subject to taxation because they provide shelter as well); *Kdal, Inc. v. County of St. Louis,* 308 Minn. 101, 103, 240 N.W.2d 560, 561 (1976) ("The terms 'structure' and 'equipment' are not mutually exclusive."). We reach the same conclusion here and hold that the 30 disputed tanks, bins, and silos fall within the broad definition of subdivision 1(a).

■ But because "real property" and "equipment" are not mutually exclusive terms, the second step in the statutory analysis requires a determination of whether the tanks, bins, and silos fall within the definition of equipment under subdivision 1(c)(i). In other words, are the tanks, bins, and silos "tools, implements, machinery, or equipment attached to or installed in real property for use in the business or production activity conducted thereon"? Minn.Stat. § 272.03, subd. 1(c)(i). SMBSC contends, and we agree, that the tanks, bins, and silos meet the definition of equipment under subdivision 1(c)(i).

■ If the tank, bin, or silo is both real property and equipment, then it is excluded from the definition of "real property" *unless* an exception to the exclusion in subdivision 1(c)(i) applies. Accordingly, the third step in the statutory analysis is to determine whether the tank, bin, or silo that qualifies as equipment under the exclusion in subdivision 1(c)(i) is a structure that has an "exterior shell" and "which constitutes walls, ceilings, roofs, or floors" and, if so, whether "the shell of the structure has structural, insulation, or temperature control functions or provides protection from the elements." Minn.Stat. § 272.03, subd. 1(c)(iii). If the tank, bin, or silo is such a structure, then "[t]he exclusion provided in clause (i) does not apply to the exterior shell of [the] structure" and the exterior shell of the tank, bin, or silo is included in the definition of real property. *Id.*

The tax court found that each tank, bin, and silo at issue had walls, a roof or a ceiling, and floors, and that the exterior shell of each both performs a structural function and provides shelter from the elements. *S. Minn. Beet Sugar Coop,* 2006 WL 3803470, at *2. The tax court therefore concluded that the various tanks, bins, and silos, "exclusive of equipment contained

therein," are taxable real property because they fell within the exception to the exclusion. *Id.* at *3–4.

The tax court's factual findings that the 30 tanks, bins, and silos had walls, a roof or a ceiling, and floors, and that each performed a structural function of shelter are not clearly erroneous. Numerous witnesses testified about the sugar beet plant's business operations and the nature of the tanks, bins, and silos located on the subject property. For instance, the former vice-president of operations for SMBSC testified that the sugar storage bins are used for storage and conditioning and they have "sides" or "walls," and "tops" or "ceilings" that provide both a structural function and protection from the elements. He also testified that the Weibull bin has a "bottom" or "floor," a "roof," and "sides" or "walls" which provide a structural function by holding the sugar in a controlled environment and provide protection from the elements. He further testified that the thick juice tanks have

"tops," and are used for storing thick beet juice for variable periods of time (sometimes longer than a year). The tax court also inspected the property and had the opportunity to observe the tanks, bins, and silos at issue. Because the evidence in the record supports the tax court's findings that each of the tanks, bins, and silos at issue had walls, a roof or a ceiling, and floors, and that each performs a structural function and provides shelter from the elements, the tax court's findings are not clearly erroneous.[3]

■ Because the evidence supports the tax court's factual determination that the tanks, bins, and silos fell within the exception of subdivision 1(c)(iii), the plain language of the statute leads us to conclude that the exterior shells of the tanks, bins, and silos are taxable. The tax court's legal determination that these items were not excluded from taxation therefore was proper.[4]

3. SMBSC and amicus curiae the Minnesota Chamber of Commerce (the chamber) argue that Minn.Stat. § 272.03, subd. 1(c)(iii) is ambiguous. We disagree. The portion of the statute at issue here involves common terms such as wall, roof, ceiling, and floor. These terms are not ambiguous. But even if we were to find that the statute was ambiguous, the legislative history to which the amicus brief draws our attention would not lead us to conclude that the tax court erred. This legislative history is, at best, unclear about exactly what the legislature intended when it enacted subdivision 1(c)(iii). Finally, we reject SMBSC's and the chamber's interpretation of the exception in subdivision 1(c)(iii) to the exclusion in subdivision 1(c)(i) because it has the consequence of broadly construing the exclusion from taxation in subdivision 1(c)(i). *See ILHC of Eagan,* 693 N.W.2d at 419 (noting that statutory provisions that exempt property from taxation should be strictly construed). SMBSC's and the chamber's statutory interpretation argument is, in essence, a debate over the wisdom of subdivision 1(c)(iii). This debate should be waged at the legislature, not in the judicial branch. *See,*

*e.g., In re McCannel,* 301 N.W.2d 910, 918 (Minn.1980) (noting "that the wisdom and social effects of [tax provisions] lie within the responsibility of the legislatures, not the courts").

4. SMBSC also suggests that the tax court erred in excluding an expert it proffered in rebuttal. This evidentiary issue has not been properly preserved for review. *Carson Pirie Scott & Co. v. County of Hennepin,* 576 N.W.2d 445, 447 n. 1 (Minn.1998). But even if we were to examine the question, SMBSC's argument is without merit. The tax court noted that the testimony at issue would have been duplicative of testimony already in evidence from SMBSC's first expert. The tax court's exclusion of repetitive evidence is not error. *See* Minn. R. Evid. 403 (noting that cumulative evidence may be excluded).

Finally, SMBSC argues that the tax court erred as matter of law when it concluded that the 30 tanks, bins, and silos, "exclusive of equipment contained therein," are taxable property under the statute. In particular, SMBSC argues that the tax court's use of the

## II.

Before turning to the valuation question, the tax court determined that the subject property is "special purpose property."[5] SMBSC contends the court's determination that the subject property is special purpose property was error. We will overturn the tax court's determination that the property is special purpose property only if it is clearly erroneous. *See Fed. Reserve Bank of Minneapolis v. State*, 313 N.W.2d 619, 621 (Minn.1981).

We have said that special purpose property is " 'property that is *treated in the market* as adapted to or designed and built for a special purpose,' " and we have noted that the definition of special purpose property " 'combines both functional and structural aspects: a special purpose property becomes such either by its use for unique functions or by its distinctive, specially-designed structural details.' " *Am. Express Fin. Advisors v. County of Carver*, 573 N.W.2d 651, 656 (Minn.1998) (quoting *Fed. Reserve Bank of Minneapolis*, 313 N.W.2d at 621–22). We have also said that "a special purpose property is one that, due to its unique function or design, is not likely to be sold on the market and cannot readily be converted to other uses without a large capital investment or a substantial loss in the investment value of the property's special features." *Id.*

The tax court's determination that the subject property is special purpose property is not clearly erroneous.[6] The court considered the factors set forth in *American Express Financial Advisors*, 573 N.W.2d at 656. Specifically, the court concluded that the subject property is special purpose property because the subject property (1) has "unique designs" including structures designed specifically for processing sugar beets, (2) is unlikely to be sold on the market because there is a "limited market due to [the property's] unique function and design," and (3) is unlikely to be converted to another use without "a large capital investment" and a "massive loss in the investment value of the Subject Property's special features." *S. Minn. Beet Sugar Coop*, 2006 WL 3803470, at *12–13.

The record evidence supports the court's conclusions. First, the testimony of SMBSC's former vice president indicates that many of the buildings and structures on the subject property were designed

---

phrase "exclusive of equipment contained therein" rather than the phrase "exterior shell" was erroneous. Although we agree that it would have been preferable for the tax court to use the statutory language, these phrases are not materially different in the context of this case.

**5.** The court apparently addressed this issue because it believed that if it determined that the subject property is special purpose property, then it need not conduct a comparable sales analysis as part of the valuation inquiry. *See S. Minn. Beet Sugar Coop*, 2006 WL 3803470, at *13 ("When valuing a special purpose property, it is appropriate to rely solely on the cost approach to value.").

**6.** It appears that after the tax court defined the "real property" for purposes of Minn.Stat.

§ 272.03, it considered all the property that qualified as "real property" under section 272.03 (the land, the buildings, and the exterior shells of the 30 tanks, bins and silos) to determine whether the subject property is special purpose property. Although SMBSC argues that "[t]his Court has never used nontaxable production equipment to determine whether a building is a special purpose property," SMBSC has not argued that if the exterior shells of the tanks, bins, and silos at issue are taxable real property, as we have determined above, then the tanks, bins, and silos should not be considered when making the special purpose property determination. We conclude that the tax court appropriately considered all of the property that it determined to be real property under section 272.03 when deciding whether the subject property was special purpose property.

solely for processing sugar beets. Additionally, the improvements on the land, including 120 acres of ponds, 9 beet piling strips, and railroad track, together with a specialized building for loading sugar into railroad cars, are all uniquely designed for processing sugar beets. Second, both SMBSC's and the county's experts concluded that the property was limited market property, meaning that only a limited number of potential buyers would be interested in purchasing the property. Third, the evidence indicates that converting the property to another use would require a large investment and would result in a loss of value related to the special features in the property. For instance, the county's expert testified that if the subject property were used for another purpose, the significant investment made in the ponds, piling strips, and tanks, bins, and silos would be lost. We hold that the tax court did not err in finding that the subject property was special purpose property.[7]

### III.

■■■■ SMBSC next claims that the tax court erred when it decided to "rely solely on the cost approach" when valuing the subject property. *S. Minn. Beet Sugar Coop*, 2006 WL 3803470, at *13. There are three basic approaches to determining the value of real estate:

(1) the market comparison approach, which is based on prices paid in actual market transactions involving comparable properties; (2) the cost approach,

which is founded on the proposition that an informed buyer would pay no more for the property than the cost of constructing new property having the same utility as the subject property; and (3) the income approach, which is predicated on the capitalization of the income the property is expected to generate.

*Equitable Life Assurance Soc'y v. County of Ramsey*, 530 N.W.2d 544, 552 (Minn. 1995). We have said that "[w]henever possible, appraisers should apply at least two approaches to market value because the alternative value indications derived can serve as useful checks on each other." *Id.* at 553.

SMBSC's expert appraiser relied on both the market comparison approach and the cost approach when he appraised the subject property. In the market comparison approach, 20 comparable sales were identified: 3 sales of beet sugar plants (the plants were in Hereford, TX, Moses Lake, WA, and Hamilton City, CA), 9 sales of "a range of agri- or food-processing facilities from the general region of the subject property," 3 general industrial sales from outstate Minnesota, and 5 sales of operating beet sugar plants which were sold at the same time that the entire business as a "going concern" was sold.[8] Under the market comparison approach, SMBSC's expert concluded the market value of the subject property was $7.5 million.

SMBSC's expert also conducted a cost approach appraisal. Of the 30 tanks, bins,

---

**7.** SMBSC also argues that the tax court erred when it found that the highest and best use of the subject property was a sugar beet processing plant. Because we conclude that the tax court's determination that the property is special purpose property is not clearly erroneous, we also conclude that the tax court did not clearly err when it made the highest and best use determination. *See, e.g.,* The Appraisal Institute, *The Appraisal of Real Estate* 326 (12th ed.2001) (stating that because there are

limited uses for a special-purpose property, "[t]he highest and best use of a special-purpose property as improved is probably the continuation of its current use if that use remains viable").

**8.** The expert concluded the "going concern" sales could not "provide a reliable finite indication of fee simple real estate value" and therefore did not use them in his analysis.

and silos on the subject property, SMBSC's cost approach appraisal included the entire value of two beet pellet silos, the "outer skin" of the Weibull bin, and one-half the value of the four sugar silos. SMBSC's cost approach appraisal did not include the 14 thick juice tanks because the appraiser concluded they "are strictly process related and therefore not taxable as real estate." The appraisal also did not include any of the remaining nine tanks, bins, and silos on the subject property. After accounting for depreciation, SMBSC's expert concluded that based on a cost approach the market value of the subject property is $7.625 million.[9]

The county's expert used only a cost approach when valuing the property. He included all of the 31 buildings, the 30 disputed tanks, bins, and silos, and numerous improvements on the subject property in his appraisal, and, after subtracting for depreciation, he concluded the value of the subject property was $55 million.

■ As noted above, the tax court concluded that only the cost approach was appropriate in this case. In previous cases, we have held that it is not error for a court to rely exclusively on the cost approach when valuing special purpose property. *Fed. Reserve Bank of Minneapolis*, 313 N.W.2d at 623–24; *see also American Express Fin. Advisors*, 573 N.W.2d at 657 ("In the narrow context of special purpose properties, we have generally permitted the use of a cost approach alone because, '[t]he very nature of special purpose property is such that market value cannot readily be determined by the existence of an actual market, and therefore other methods of valuation, such as reproduction cost, must be resorted to.'" (quoting *In re McCannel*, 301 N.W.2d 910,

924 (Minn.1980))). Thus, the general rule in cases involving special purpose property is that because comparable sales are not available, a court may rely on the cost approach alone. But we have also said that a single valuation approach may be used only if the tax court "explain[s] the weaknesses of the rejected approaches." *Ferche Acquisitions, Inc. v. County of Benton*, 550 N.W.2d 631, 633 n. 3 (Minn. 1996). And we have not ruled out the possibility that comparable sales evidence may exist for special purpose properties. *See, e.g., Fed. Reserve Bank of Minneapolis*, 313 N.W.2d at 624 ("*Usually*, as in our case here, comparable sales are not available for a building that is a special use property." (emphasis added)).

Here, SMBSC's expert appraiser provided evidence of 20 "comparable" sales. The county elicited testimony from SMBSC's expert appraiser and several other witnesses seeking to prove that the sales were not comparable for various reasons. The tax court may have concluded that the sales were not comparable, and therefore rejected the evidence, but the court made no findings or conclusions related to the evidence.

■ We conclude that the tax court's failure to make any findings or conclusions related to SMBSC's comparable sales evidence violated the tax court's duty to "use its independent judgment in evaluating all testimony and evidence before the court." *McNeilus Truck & Mfg.*, 705 N.W.2d at 413. Because the court apparently concluded, based solely on the classification of the property as special purpose property, that it was appropriate to rely on the cost approach alone, and because the court did not make any findings or conclusions relat-

---

9. SMBSC's expert did not use this figure in his final determination of market value. Instead, he noted only that the estimate of

$7.625 million was "supportive of the sales comparison conclusion[ ]" that the value of the property was $7.5 million.

ed to SMBSC's "comparable" sales, we remand to the tax court to issue findings that reflect its consideration of the comparable sales evidence offered by SMBSC. *Cf. id.* at 415 ("[W]e remand to the tax court with instructions to consider all properly offered and admitted comparable sale evidence * * * and to evaluate in detail the expert evidence offered by both parties.").[10]

## IV.

■ We turn next to the issue of valuation. SMBSC claims that the tax court erred when it affirmed the county's assessed value. The tax court concluded that neither party presented sufficient evidence to enable it to value the subject property. The court therefore affirmed the county's assessed value, explaining that it did so because the county's assessment is prima facie valid. We defer to the tax court's valuation decisions where they find reasonable support in the record evidence. *Hansen v. County of Hennepin*, 527 N.W.2d 89, 93 (Minn.1995). But when the tax court "completely fail[s] to explain its reasoning," we have recognized that no deference is owed. *Id.*

■ The county argues the tax court's decision should be affirmed because the assessor's valuation is presumed legal and SMBSC did not meet its burden to prove another value. SMBSC argues, on the other hand, that the presumed validity of the assessment is not relevant because SMBSC appeared for trial.

We have repeatedly recognized that the government's assessment of real property taxes is prima facie valid. *E.g., Schleiff v. County of Freeborn*, 231 Minn. 389, 395–96, 43 N.W.2d 265, 269 (1950). The legislature has provided for this presumption. Minn.Stat. § 271.06, subd. 6 (2006) ("[T]he order of the commissioner or the appropriate unit of government in every case shall be prima facie valid."); Minn. Stat. § 272.06 (2006) (providing that the assessment is "presumed to be legal until the contrary is affirmatively shown"). These two statutes create a presumption of validity for the county's assessment in this case.[11]

■ In this case, we are asked to determine the effect of the prima facie validity when the taxpayer appears for trial and presents evidence. The statute provides that if the taxpayer does not appear, "the Tax Court shall enter its order affirming the order of * * * the appropriate unit of government from which appeal was taken." Minn.Stat. § 271.06, subd. 6; *see also Oliver Iron Mining Co. v. Comm'r of Taxation*, 247 Minn. 6, 21, 76 N.W.2d 107, 117 (1956) (noting that "[i]f no appellant appears, the board must affirm" the order

10. In addition to arguing that the tax court erred when it relied solely on the cost approach to value, SMBSC argues that the tax court erred when it rejected SMBSC's cost approach estimate of market value. We conclude, however, that the evidence supports the tax court's decision to reject SMBSC's estimated market value based on the cost approach because SMBSC's expert failed to include all of the taxable real property in its estimate. For instance, SMBSC's appraisal did not include the exterior shell of the 14 thick juice tanks or the two molasses tanks, which we have held above the tax court properly determined to be taxable.

11. Section 271.06 is located in the chapter related to the tax court generally and section 272.06 is located in the chapter dedicated specifically to property taxes. In this case—which involves a taxpayer's appeal to the tax court of the county's property tax assessment—the statutes operate in the same way to give prima facie validity to the county's assessment. *Cf. Buettner v. City of St. Cloud*, 277 N.W.2d 199, 204 (Minn.1979) (construing "presumption of validity" as operating the same as "a prima facie case").

made by the governmental unit below). But if the taxpayer does appear, the case is to be tried de novo. *Oliver Iron Mining Co.*, 247 Minn. at 21, 76 N.W.2d at 117. That the case is subject to a trial de novo, however, does not make the prima facie validity of the county's assessment irrelevant. Rather, the presumptive validity of the county's assessment remains, and the burden is on the party appealing that assessment to show that it is excessive. *McCannel*, 301 N.W.2d at 923 ("In a proceeding brought by a taxpayer to challenge a property valuation, there is a prima facie presumption that the assessor's valuation is proper, and the taxpayer has the burden of proving that the assessment is excessive."); *Schleiff*, 231 Minn. at 395–99, 43 N.W.2d at 269 (describing "the assessor's valuation [as] prima facie valid" and noting that "the burden rest[s] upon the taxpayer to prove that it is excessive"). We have recognized this principle in several other cases. For example, in *Stronge & Lightner Co. v. Comm'r of Taxation*, we said that if a taxpayer appears and offers evidence, the tax court shall conduct a trial de novo. 228 Minn. 182, 194, 36 N.W.2d 800, 806–07 (1949). But we were also careful to note that the taxpayer has the burden of proof at trial. Id. at 195–96, 36 N.W.2d at 807; *see also Crossroads Ctr. (Rochester), Inc., v. Comm'r of Taxation*, 286 Minn. 440, 444, 176 N.W.2d 530, 534 (1970). More recently, we have specifically described the taxpayer's burden when challenging an assessment of real estate taxes as the burden "to show that [the assessment] does not reflect the true market value of the property." *Gale v. County of Hennepin*, 609 N.W.2d 887, 890 (Minn.2000).

Notwithstanding this authority, SMBSC contends that its appearance makes the prima facie validity of the assessment irrelevant and that the tax court therefore erred in upholding the county's assessment. SMBSC cites *Red Owl Stores, Inc. v. Commissioner of Taxation*, 264 Minn. 1, 117 N.W.2d 401 (1962), in support of its argument. SMBSC's reliance on *Red Owl* is misplaced. In *Red Owl*, we said that if the taxpayer appears "the case is tried de novo, which means that either party may introduce evidence and the decision of the [tax court] is therefore based upon all the evidence placed before it." *Id.* at 5, 117 N.W.2d at 405. The taxpayer appeared in *Red Owl*, but we did not say that the taxpayer overcame the prima facie validity simply by appearing in court. Rather, we recognized, as we did in all of the authorities cited above, that "the good faith of tax assessment officers and the validity of their actions are presumed and the burden of proof of overcoming such presumption rests upon the complaining party." *Id.* at 8, 117 N.W.2d at 406.

This conclusion finds support in the very definition of "prima facie." We have said that " 'a prima facie case simply means one that prevails in the absence of evidence invalidating it.' " *Tousignant v. St. Louis County*, 615 N.W.2d 53, 59 (Minn.2000) (quoting *Trudeau v. Sina Contracting Co.*, 241 Minn. 79, 87, 62 N.W.2d 492, 498 (1954)); *see* Black's Law Dictionary 1228 (8th ed.2004) (defining "prima facie" as "[s]ufficient to establish a fact or raise a presumption unless disproved or rebutted"). From this definition it is evident that merely showing up will not defeat the prima facie validity of an assessment. Rather, as our cases make clear, in order to defeat the prima facie validity of the assessment, the taxpayer must offer evidence to invalidate the assessment.

In sum, we hold that SMBSC's appearance for trial before the tax court does not make irrelevant the prima facie validity of the county's assessment. The presumptive validity remains unless SMBSC met

its burden to show that the assessment was invalid.

■ This conclusion does not end the analysis in this case, however, because SMBSC presented evidence during the trial and argued that the county's assessment was invalid. If the taxpayer offers evidence to invalidate the assessment and meets its burden to show that the assessment does not reflect the true market value of the property, the tax court must determine the market value of the property. *See McNeilus Truck & Mfg.*, 705 N.W.2d at 413. The tax court may still determine that the value of the property is equal to the estimated market value reflected in the assessment, but such a conclusion requires independent support in the record evidence. *See Northwest Airlines, Inc. v. Comm'r of Revenue*, 265 N.W.2d 825, 830 (Minn.1978) ("[The taxpayer's] evidence was sufficient to rebut the state's prima facie case, and the burden shifted to the state to present additional evidence to support the commissioner's valuation."); *Xerox Corp. v. County of Hennepin*, 309 Minn. 239, 245, 244 N.W.2d 135, 138 (1976) (noting that "additional testimony or evidence would be required to support the trial court's findings upholding the assessed value" where evidence offered by the taxpayer "rebuts the prima facie validity of the assessed value"); *Schleiff*, 231 Minn. at 398, 43 N.W.2d at 270 (finding that expert testimony offered by county provided "a sound basis" for the trial court's decision to value the property at the assessed value).

■ Here, the tax court appears to have used the wrong standard in evaluating the evidence before it. The court did not find that SMBSC did not meet its burden to show that the assessed value did not reflect the true market value of the subject property. Nor did it find that independent evidence in the record supports the county's assessed value. Indeed, the tax court refused to value the property. The court affirmed the county's assessment after concluding that it could not reach a "well supported and reasonable determination as to the market value of the Subject Property" because SMBSC's appraisal was missing "an analysis as to the other taxable components, such as the tanks, bins and silos and land improvements." *S. Minn. Beet Sugar Coop*, 2006 WL 3803470, at *13–14.[12]

But to meet its burden to overcome the presumed validity of the county's estimated market value, SMBSC need not necessarily put forth evidence that would allow the tax court to determine the market value of the subject property. Rather, SMBSC need only put forth evidence to show that the county's assessed value "does not reflect the true market value of the property." *Gale*, 609 N.W.2d at 890; *see Xerox Corp.*, 309 Minn. at 246, 244 N.W.2d at 138 (finding that the taxpayer had met its burden to overcome the presumption). SMBSC might meet this burden by, for example, presenting evidence of truly comparable sales that the county

**12.** It is apparently common practice for the tax court to "default" to the estimated market value reflected in the county's assessment, based on the statutory presumption that it is valid, rather than on evidence that supports the county's assessment when the court has rejected each party's expert appraisal. *See, e.g., Lowertown Five Ltd. P'ship v. County of Ramsey*, No. C7–01–1964, 2002 WL 1453736, at *4 (Minn. T.C. June 26, 2002) ("The assessor's estimated market value is prima facie correct. In this case neither party was able to overcome that presumption. Consequently, we have little alternative but to affirm the assessor's estimated value." (citation omitted)). The county argues that this court has approved of this practice in prior decisions, but we have been unable to find any case law that supports the county's argument.

had not considered or showing that the county taxed property that is not taxable.[13]

For these reasons, we remand this case to the tax court to determine whether SMBSC has met its burden to show that the county's assessment did not reflect the true market value of the property. If SMBSC has not met its burden, the court's order should explain why that is the case, *see McNeilus Truck & Mfg.*, 705 N.W.2d at 414, and the court should affirm the county's assessment. *See State v. Fridley Recreation & Serv. Co.*, 288 Minn. 218, 221, 179 N.W.2d 172, 174 (1970) ("[T]he taxpayer has failed to carry the burden of proving that the assessments were in fact excessive, [and] the trial court was fully justified in adopting the determinations of the assessor."). If the court concludes that SMBSC has met its burden, then the court cannot affirm the assessed value unless there is independent support for it in the record.[14] If there is insufficient evidence in the record to support the county's assessment, the court must determine for itself the market value of the subject property. *See McNeilus Truck &*

*Mfg.*, 705 N.W.2d at 413 (noting that the tax court has a duty "to assess property at market value"); *see also* Minn.Stat. § 273.11, subd. 1 (2006) ("[A]ll property shall be valued at its market value."). If the court cannot determine the true market value of the property from the evidence in the record, then the court must reopen the record for additional evidence so that it can determine the actual value of the property. *See Xerox Corp.*, 309 Minn. at 245–46, 244 N.W.2d at 138 (concluding that the taxpayer had met its burden to overcome the prima facie validity of the assessment and remanding to the tax court to determine the market value of the property); Minn. R. 8610.0120, subp. 2 (2005) ("If, after the holding of any hearings in any matter, the tax court finds the rights of the parties will be better served by the holding of a further hearing in the matter, the court may order a further hearing * * *.").

## V.

The final issue we address is whether the tax court erred when it failed

---

**13.** For example, SMBSC introduced the county's property record and appraisal card concerning the subject property as evidence. The property record and appraisal card indicates that the county's assessment included at least one item, "E & W Pulp Bins," that is not mentioned anywhere in the tax court's order. At oral argument the county contended that the E & W Pulp Bins were the disputed storage bins the tax court found to be taxable, but the square footage used to describe the E & W Pulp Bins on the appraisal card does not match the square footage used to describe the storage bins the tax court found were taxable. Because the tax court did not determine whether the E & W Pulp Bins are taxable real property (or were otherwise the same as the storage bins), we cannot determine whether SMBSC introduced evidence indicating that the county taxed property that is not taxable real property under Minn.Stat. § 272.03. In addition, the property record and appraisal card do not indicate whether the county in-

cluded the entire value of the 30 disputed tanks, silos, and bins in the assessment, or whether only the exterior shell was included, as required by the statute. *See* Minn.Stat. § 272.03, subd. 1(c)(iii). If the tax court could determine from the property record and appraisal card that the assessment included more than just the exterior shell of those structures, then SMBSC would have met its burden to show that the assessment did not reflect the true market value of the property.

**14.** In other words, if the taxpayer meets its burden to show that the assessment does not reflect the true market value of the property, the court cannot affirm the county's assessment simply because it is presumed valid; rather, if the court affirms the county's assessment, it must be because the evidence indicates that the county's assessment reflects the actual market value of the property, and the tax court should so explain.

to grant SMBSC's request for "sales ratio" or "unequal assessment" relief. " 'To determine whether a property has been unequally assessed,' * * * '[the property's] actual market value and real estate tax assessment must be compared with the market value and real estate tax assessments of other properties.' " *Anacker v. County of Cottonwood,* 302 N.W.2d 342, 345 (Minn.1981) (quoting *United Nat'l Corp. v. County of Hennepin,* 299 N.W.2d 73, 76 (Minn.1980)). Thus, a tax court faced with an unequal assessment claim must make two essential findings of fact: "[1] The actual market value of the property at the time of the assessment and [2] the percentage applied by the assessor to the market value on the property involved as compared with the percentage applied to other property in the assessment district, of the same class, in arriving at the full and true value for tax purposes." *Renneke,* 255 Minn. at 248, 97 N.W.2d at 380. The burden is on the taxpayer to prove that its property has been subject to unequal assessment. *In re Objection to Real Property Taxes,* 353 N.W.2d 525, 530 (Minn.1984).

■ The tax court concluded that there was an "insufficient basis" to grant sales ratio relief *because* the court affirmed "the assessor's estimated market value * * * based upon it being prima facie valid rather than based upon affirming evidence." *S. Minn. Beet Sugar Coop,* 2006 WL 3803470, at *14. Because we are remanding on the issue of the market value of the subject property, we also remand on this issue. If the tax court determines that SMBSC met its burden to show that the assessment did not reflect the true market value of the property and the court determines the actual market value of the subject property, the court must address SMBSC's unequal assessment claim. If the court determines that SMBSC has not

met its burden or if the court affirms the county's assessment based on evidentiary support, then the tax court still must address the unequal assessment claim. In that instance, the court should proceed as if the property's actual market value is the estimated market value reflected in the assessment and determine whether SMBSC has met its burden to prove the property has been unequally assessed.

Affirmed in part, reversed in part, and remanded.

HANSON, J., took no part in the consideration or decision of this case.