KOHL'S DEPARTMENT STORES,
INC., Relator,

v.

COUNTY OF WASHINGTON,
Respondent.

No. A12–1507.

Supreme Court of Minnesota.

Aug. 7, 2013.

Thomas R. Wilhelmy, Judy S. Engel, Fredrikson & Byron, P.A., Minneapolis, MN, for relator.

Pete Orput, Washington County Attorney, James Zuleger, Assistant County Attorney, Stillwater, MN, for respondent.

## OPINION

ANDERSON, Justice.

Relator Kohl's Department Stores, Inc., challenged respondent Washington County's assessment of the value of one of its properties. On appeal from the tax court, Kohl's now argues that (1) the tax court erred by failing to adjust its capitalization rate to account for the property taxes paid by the owner on vacant space and for the neighborhood's excessive vacancy and perceived blight; and (2) the tax court erred by calculating the property's fair market rent using comparable leases rather than a percentage of retail sales method. Because we conclude that the relator has failed to meet its burden of demonstrating that the tax court's capitalization rate and calculation of market rent were clearly erroneous, we affirm.

I.

This case involves a challenge by Kohl's to the County's assessment of the value of one of its department stores for tax years 2007 to 2009. The store in question is located at 7990 Hardwood Avenue South in Cottage Grove, and its construction was completed in 2004. During 2008, an approximately 49,100–square–foot portion of the property (the "Culver's Outlot") was sold. The parties agree that the fair market value of the Culver's Outlot was $700,000 for both 2007 and 2008.

The relator challenged the respondent's valuation in the Minnesota Tax Court. Each party introduced an expert appraisal. Relator's expert was Michael F. Amundson, MAI, CCIM, MRICS, of Integra Re-

alty Resources. Respondent's expert was Robin Swanson, AMA. Amundson conducted income capitalization, cost, and sales comparison approach analyses as part of his appraisal, while Swanson conducted income capitalization and cost approach analyses, though she gave the most weight to the income approach. The tax court also found that Swanson "considered but did not rely on a sales approach due to a lack of sufficient sales data."

The valuations of the initial county assessor, the opposing experts, and the tax court were as follows:

|  | County Assessment | Relator's Expert | County Expert | Initial Tax Court | Amended Tax Court |
|---|---|---|---|---|---|
| 2007 | $6,322,200 | $5,600,000 | $8,038,000 | $6,977,800 | $6,834,700 |
| 2008 | $6,455,300 | $5,400,000 | $8,038,000 | $6,977,800 | $6,834,700 |
| 2009 | $6,455,300 | $4,450,000 | $7,338,000 | $5,908,500 | $5,773,900 |

The tax court issued its initial order on March 16, 2012. Following relator's motion for amended findings of fact, conclusions of law, or a new trial, the tax court amended its initial order slightly to include operating costs pertaining to periods of vacancy. It denied relator's other claims.

Kohl's now appeals from the tax court's amended order, arguing that the tax court erred by (1) failing to adjust its capitalization rate to account for the property taxes paid by the owner on vacant space and for the neighborhood's excessive vacancy and perceived blight; and (2) calculating the property's fair market rent using comparable leases rather than a percentage of retail sales method. Because we conclude that the relator has failed to meet its burden of demonstrating that the tax court's capitalization rate and calculation of market rent were clearly erroneous, we affirm.

II.

■ "Our review of [a] final order of the tax court is limited." *S. Minn. Beet Sugar Coop v. Cnty. of Renville,* 737 N.W.2d 545, 551 (Minn.2007). "We determine only whether the tax court lacked jurisdiction, whether the tax court's order is supported by the evidence and is in conformity with the law, and whether the tax court committed any other error of law." *Id.* While we "review de novo the tax court's legal determinations" its "factual findings are reviewed under a clearly erroneous standard." *Id.* (citation omitted) (internal quotation marks omitted).

■ "Our standard of review is deferential: we will sustain the tax court's valuation determination on appeal unless it is clearly erroneous." *Eden Prairie Mall, LLC v. Cnty. of Hennepin,* 797 N.W.2d 186, 192 (Minn.2011). But we will not defer "when the tax court has clearly misvalued the property or has failed to explain its reasoning." *Id.* "If the tax court's reasoning is not explained in sufficient detail, we *may* remand to the tax court to reconsider the evidence and clarify its analysis." *S. Minn. Beet Sugar Coop,* 737 N.W.2d at 551 (emphasis added).[1]

■ "The tax court's decision is clearly erroneous if, among other things, the decision is not reasonably supported by the evidence as a whole." *Eden Prairie Mall,*

1. The County argues that we "will affirm the Tax Court's determination of the market value when it falls between the values presented by the parties' respective expert witnesses." We have adopted no such standard and we decline to do so here.

797 N.W.2d at 192. But, because we have recognized that "real estate appraisal is an inexact" process, *Harold Chevrolet, Inc. v. Cnty. of Hennepin,* 526 N.W.2d 54, 59 (Minn.1995), we have said that the taxpayer must carry "the burden of showing that the valuation reached by the assessor is excessive." *Equitable Life Assurance Soc'y of the United States v. Cnty. of Ramsey,* 530 N.W.2d 544, 552 (Minn.1995).

### III.

The relator argues that the tax court erred by failing to adjust its capitalization rate to account for the property taxes paid by the owner on vacant space and for the neighborhood's excessive vacancy and perceived blight. The capitalization rates proposed by the parties' experts and the rates adopted by the tax court were as follows:

|      | Kohl's Expert | County Expert | Tax Court |
| ---- | ------------- | ------------- | --------- |
| 2007 | 8.5%          | 7.658%        | 8%        |
| 2008 | 8.75%         | 7.658%        | 8%        |
| 2008 | 8.75%         | 7.658%        | 8%        |

Each expert used local comparable properties and surveys to determine market capitalization rates. Relator's expert, using national surveys, argued that market capitalization rates were between 6.8 percent and 7.27 percent for 2007; between 6.6 percent and 7.24 percent for 2008; and between 7 percent and 7.89 percent for 2009. Respondent's expert, using a local survey, argued that the market capitalization rate was 8 percent for 2007, 7.5 percent for 2008, and 7.1 percent for 2009.

Each expert also identified specific local comparables. Relator's expert pointed to rates ranging from 7 percent to 8.3 percent, with one exception. This exception, a former Wal–Mart location that had been abandoned by the tenant and featured a rate far in excess of any other comparable, was given minimal weight by the tax court as an outlier. Respondent's expert identified comparables with rates between 7.3 percent and 7.77 percent.

As noted in the table above, the actual capitalization rates applied by the tax court were 8 percent for 2007 and 2008, and 8.5 percent for 2009.

### A.

■ The relator argues that the tax court erred by failing to adjust its capitalization rate to account for the fact that a property owner pays property taxes on vacant portions of the parcel. It emphasizes that the County's expert made an upward adjustment of .158% to her capitalization rates to account for this expense. When the relator made this argument in its motion to amend following trial, the tax court responded by stating that "[i]n considering both experts' cap comparables, we arrived at a cap rate that included the property tax rate. Thus, we find a change in the cap rate is not warranted."

This response is less than satisfactory. As we have repeatedly emphasized, we expect the tax court to provide a more detailed explanation of its reasoning and conclusions, *see S. Minn. Beet Sugar Coop,* 737 N.W.2d at 551, and, as suggested by relator, the analysis by the tax court here is cursory. That said, we are mindful of the tax court's statement that it did address the relator's property tax argument in its initial valuation, and given the apparently reasonable capitalization rate it assigned, we cannot say that we are "left with a definite and firm conviction that a mistake has been committed." *Berry & Co., Inc. v. Cnty. of Hennepin,* 806 N.W.2d 31, 33 (Minn.2011) (citation omitted) (inter-

nal quotation marks omitted). Thus, we cannot conclude that the tax court's treatment of vacant-portion property tax liability in its capitalization rate was clearly erroneous.

## B.

■ The relator also argues that the tax court erred by failing to adjust its capitalization rate to account for the neighborhood's excessive vacancy and perceived blight. The relator points to vacant properties in the area that had formerly housed a Home Depot and a Hollywood Video, and claims that the tax court erred as a matter of law by excluding the former Wal–Mart location.

The tax court did address the Wal–Mart property, reasoning that it should be given "minimal weight" because it "was abandoned by Wal–Mart, its tenant" and "serve[d] as an outlier." Though the relator disagrees with the tax court's analysis, our review of the tax court's determination is deferential, and we will not reject it unless it is clearly erroneous. *Eden Prairie Mall,* 797 N.W.2d at 192. The capitalization rate for the Wal–Mart property was far in excess of the capitalization rate for any of the other comparable properties presented by the parties' experts: 11.83 percent. As the next highest rate among the properties the relator's expert presented was only 8.3 percent, we cannot say that the tax court's determination that the Wal–Mart property was an outlier was clear error.

■ As for the proposed adjustment for neighborhood vacancy and perceived blight, the tax court's orders were again cursory. The court's response to the relator's argument, found in the court's amended order, seems to be this: "We find our initial conclusion of a cap rate of 8% for 2007 and 2008, and 8.5% for 2009 already includes an upward adjustment based on the cap comparables used and the weight given." The tax court appears to reason, though not with the specificity we would prefer, that its initial capitalization rates already accounted for the relevant neighborhood characteristics. Despite the failure of the tax court to fully explain its reasoning, we note that both the rates it assigned and the exclusion of the Wal–Mart property appear reasonable. We therefore conclude that the tax court's capitalization rate calculations are not clearly erroneous under our deferential standard of review.

## IV.

■ Finally, the relator argues that the tax court erred when it calculated the property's fair market rent using comparable leases rather than a percentage of retail sales method. The relator also challenges the tax court's use of certain comparable leases submitted by the respondent's expert.

Both parties submitted market comparable leases and used those leases to derive a market rent. The tax court appears to have reviewed these comparables carefully, and engaged in its own analysis of the proper market rent. The respondent presented four comparables—all Kohl's stores in the Minneapolis–St. Paul metro area—and the tax court accepted three of them. It gave "minimal weight" to the fourth because the respondent's expert "reviewed a rent roll summary but did not review the lease or lease summary." Similarly, the tax court examined the four comparables advanced by the relator, and noted that despite the fact that three were "from 21 to almost 40 years older than the Subject Property," the relator's expert did "not discuss or explain an adjustment for building condition or age." The tax court also found that the relator's expert failed to explain the adjustments he made for each

comparable to arrive at the market rent range he proposed.

The adjusted market rent proposed by the relator was $5 to $6 per square foot, while the respondent concluded that $7.10 per square foot was appropriate. The tax court assigned a market rent of $6.25 per square foot. While it would have been helpful if the tax court had carefully explained its decision to reject a percentage of sales method analysis in favor of an analysis of market comparables, it clearly engaged in a detailed examination of the evidence and reached what appears to be a reasonable conclusion. Given these considerations, we cannot conclude that the tax court's market rent determination was clearly erroneous.

Because we conclude that the relator has failed to meet its burden of demonstrating that the tax court's capitalization rate and calculation of market rent were clearly erroneous, we affirm.

Affirmed.

LILLEHAUG, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.